[No. 1291. Decided January 14, 1895.]

VICTOR E. KROMER ET AL., *Appellants, v.* FRANK P. FRIDAY ET AL., *Respondents.*

| 10 | 621 |
| f21 | 237 |
| 10 | 621 |
| d25 | 473 |
| 10 | 621 |
| e31 | 336 |
| 10 | 621 |
| 38 | 525 |
| 10 | 621 |
| 39 | 681 |
| 10 | 621 |
| q41 | 193 |

MARRIAGE— EVIDENCE — JUDGMENTS — COLLATERAL ATTACK—ACTION FOR PARTITION—COMPLAINT—ADMISSIONS BY GUARDIAN —EFFECT AS TO INFANT DEFENDANTS—PRECATORY TRUSTS—COMMUNITY PROPERTY—HOMESTEAD ENTRY.

The fact that a man and woman who have been living together as man and wife subsequently have a marriage ceremony performed, is not conclusive evidence that there was no previous marriage between them.

Where all parties in interest were before the probate court upon an application for the sale of a decedent's lands, and before the superior court on appeal therefrom, a decree that a marriage existed between the decedent and a woman claiming to be his wife, and that certain land left by decedent was community property, in which she had a half interest, must stand against collateral attack, if the court had jurisdiction.

A sale of land by virtue of a partition proceeding brought by the purchaser of a wife's community half interest, is not subject to a deceased husband's will providing for the retention of the land until his children arrive at majority.

The fact that publication of the notice of sale is given before the signing of the decree therefor in partition proceedings, is merely an irregularity, when the finding of the court had in fact been made prior to the publication, and, if unappealed from, would not affect the jurisdiction of the court to order and confirm the sale.

Guardians of infant heirs may, when acting in good faith, admit

in their pleadings in partition proceedings that certain land in controversy is the community property of the parents of their wards, although the admission may be prejudicial to formerly asserted claims. (STILES, J., dissents.)

Under Code 1881, § 558, partition proceedings may be used as a form of action to try title, and the determination of that fact by the court is conclusive upon all the parties to the action.

In partition proceedings, allegations in plaintiff's complaint showing the extent of his interest in the property, the extent of the defendant's interest as he understands it, and that plaintiff and defendant are tenants in common, are sufficient to give the court jurisdiction of the subject matter, under the requirements of Code 1881, § 553, providing that "the interest of all persons in the property shall be set forth in the complaint specifically and particularly as far as known to the plaintiff."

In the absence of fraud or collusion, minors properly represented in an action for partition are bound as fully as if they had been majors and personally cited.

Although the equitable title to land acquired under the homestead laws accrues upon the making of final proof and receipt of the final certificate, the legal title does not pass from the government until the issuance of patent, and, upon the marriage of a homestead claimant between the making of final proof and the issuance of patent, the legal title to the land vests in the community. (STILES, J , dissents.)

Lands acquired under the homestead laws of the United States are, within the intent of the laws of this state, acquired by purchase and consequently are community property, when title is obtained during marriage.

*Appeal from Superior Court, Snohomish County.*

*Ronald & Piles* (*Andrew F. Burleigh* and *Lichtenberg, Shepard & Lyons*, of counsel), for appellants.

The statutory requirement that a bill of partition must set forth all the interest in the premises, and that the court must declare the rights of the parties, must be observed. *Prichard v. Littlejohn*, 21 N. E. 10; *Miller v. Sharp*, 48 Cal. 394; *Morenhout v. Higuera*, 32 Cal. 290; *Van Cortlandt v. Beekman*, 6 Paige Ch. 492; *Ramsay v. Bell*, 42 Am. Dec. 163.

The land being held subject to a precatory trust under the will of the testator, it could not be partitioned. Freeman, Partition, § 439;

*Outcalt v. Appleby*, 36 N. J. Eq. 73 ; *Gerard v. Buckley*, 137 Mass. 475 ; *Cubbage v. Franklin*, 62 Mo. 364 ; *Springer v. Savage*, 32 N. E. 520.

A guardian *ad litem* cannot consent away infant's rights. The answer by guardian cannot be read against infant at all. *Daingerfield v. Smith*, 1 S. E. 599 ; *Bank of United States v. Ritchie*, 8 Pet. 128 ; *Thayer v. Lane*, 1 Walker Ch. 202 ; *McIlvoy v. Alsop*, 45 Miss. 374. The facts which entitle complainant to a decree must be established against infants by legal proof. *Johnson v. McCabe*, 42 Miss. 259 ; 1 Daniel Ch. Prac., 169 ; *Mills v. Dennis*, 3 Johns. Ch. 367 ; *Tucker v. Bean*, 65 Me. 353 ; *Walton v. Coulson*, 1 McLean, 120 ; *Chaffin v. Kimball's Heirs*, 23 Ill. 36 ; *Wells v. Smith*, 44 Miss. 296 ; *Bennett v. Bradford*, 24 N. E. 630 ; *Luck v. Atkins*, 13 S. W. 1097 ; *Ingersoll v. Ingersoll*, 42 Miss. 155 ; *Quigley v. Roberts*, 44 Ill. 504 ; *Claxton v. Claxton*, 23 N. W. 310.

Where fraud like this has been practiced, to-wit : Admission by the guardian and no proof, though without wrong designs or improper motives, the courts have set aside decrees in partition and in foreclosure. *Pitcher v. Carter*, 4 Sandf. Ch. 1 ; *Wright v. Miller*, 1 Sandf. Ch. 103 ; *Loomer v. Wheelwright*, 3 Sandf. Ch. 135 ; *Ralston v. Lahee*, 8 Iowa, 17 (74 Am. Dec. 291); *Curtis v. Ballagh*, 4 Edwards, Ch. 635 ; *Lockwood v. Mitchell*, 53 Am. Dec. 438 ; *Long v. Mulford*, 17 Ohio St. 485 ; *Prince v. Clark*, 45 N. W. 663 ; *Kennedy v. Daley*, 1 Sch. & Lef. 375. The test whether or not fraud has been committed is was there in fact no adversary trial or decision of the issues, because of something done by the successful party. *Greene v. Greene*, 2 Gray, 366 ; *Vance v. Burbank*, 101 U. S. 514 ; *Moffat v. United States*, 112 U. S. 24; *United States v. Throckmorton*, 98 U. S. 61.

There was no decree establishing the land as community property. True, the superior court of Snohomish county, on appeal from the order of the probate court in "better investment proceeding," had apparently decreed a community interest in Mrs. Kromer, but that decree was void, not voidable, because the superior court had no jurisdiction. The only issue before the probate court, which that court had jurisdiction to pass upon was the necessity or advisability of selling the land. Code 1881, § 1621. In that proceeding, alleging community interest was a denial of the boy's title to the land in severalty, and the probate court had no jurisdiction in such a proceeding, or any other, to decide an issue involving a trial of title. *Stewart v. Lohr*, 1 Wash. 341 ; *Theller v. Such*, 57 Cal. 447 ; *Homer's Appeal*, 35 Conn. 113 ; *Proctor v. Atkyns*, 1 Mass. 321; *Buddecke v. Buddecke*, 31 La. An. 572 ; *Ferris v. Higley*, 20 Wall. 375 ; 1 Woerner, Am. Law Adm'n, p. 344. The probate court not having juris-

diction the superior court on appeal had none. It acted within its
jurisdiction when it affirmed or reversed the order of the probate
court directing a sale, but when the superior court attempted on that
appeal to go further and decide that Mrs. Kromer had any interest or
title in the land, such adjudication was in excess of its jurisdiction.
*Anthony v. Kasey*, 83 Va. 338 (5 Am. St. Rep. 227); Freeman, Judg-
ments, § 118; *Seamster v. Blackstock*, 83 Va. 232 (5 Am. St. Rep.
262); *Fox v. Nachtsheim*, 3 Wash. 684.

The land in controversy was not community property. The the-
ory of the homestead law is that the homestead shall be for the ex-
clusive benefit of the homesteader. *Anderson v. Carkins*, 135 U. S.
483; *Sturr v. Beck*, 133 U. S. 541. Under the homestead law, the
land was E. D. Kromer's separate and sole estate because it was a
gift to him from the United States government. *Cooke v. Bremond*,
27 Tex. 457 (86 Am. Dec. 630); *Noe v. Card*, 14 Cal. 577; *Fuller v.
Ferguson*, 26 Cal. 547; *Panaud v. Jones*, 1 Cal. 514; *Scott v. Ward*,
13 Cal. 459; *Wilson v. Castro*, 31 Cal. 420; *Reynolds v. West*, 1 Cal.
323; *Ingoldsby v. Juan*, 12 Cal. 564. Whether the land under home-
stead law is acquired as a gift or by purchase, E. D. Kromer's estate
and title vested in him at the date of making his final proof and pay-
ment. *Sturr v. Beck*, 133 U. S. 541; *Wirth v. Branson*, 98 U. S. 118;
*Barney v. Dolph*, 97 U. S. 652; *United States v. Schurz*, 102 U. S.
397; *Witherspoon v. Duncan*, 71 U. S. 210; *Shepley v. Cowan*, 91 U.
S. 330; *Benson Mining Co. v. Alta Mining Co.*, 145 U. S. 428. The
receipt by the patentee of a patent for land issued to him by the
United States is not necessary to pass title. *Eltzroth v. Ryan*, 26
Pac. 647; *Brazee v. Schofield*, 2 Wash. T. 216. The title to the land
having been acquired before marriage, though patent not issued till
afterwards, the land was the separate estate of E. D. Kromer. Free-
man, Partition, § 134; *Hatch v. Ferguson*, 57 Fed. 966; *Lamb's
Estate*, 30 Pac. 568. The patent relates back to the inception of the
title, to the date of the first act. *Taylor v. Brown*, 5 Cranch, 234;
*McAfee v. Keirn*, 45 Am. Dec. 331; *Clark v. Hall*, 19 Mich. 356;
*Morrill v. Chapman*, 35 Cal. 88; *Smith v. Athern*, 34 Cal. 506;
*United States v. Waddell*, 112 U. S. 76.

*Crowley, Sullivan & Grosscup* and *A. D. Austin*, for re-
spondents, Friday and Rucker.

Estoppel in pais. As to innocent third parties acting upon the
faith of facts sufficient to constitute proof of marriage, and without
knowledge to the contrary, Kromer and his devisees are estopped to
deny that they were husband and wife during all of the period of this
ostensible and notorious relationship. *Sadler v. Niesz*, 5 Wash. 182;
*Schwabacher v. Van Reypen*, 6 Wash. 154; *Dickerson v. Colgrove*,

100 U. S. 578. It is established that an estate in land may be transferred from one to another by the operation of this principle. *Kirk v. Hamilton*, 102 U. S. 68.

Estoppel by judgment. The power to hear and determine a case is jurisdiction. *United States v. Arredondo*, 6 Pet. 691; *Scott v. Mc-Neal*, 5 Wash. 309; Herman, Estoppel, §§ 102-105; *Gallaher v. City of Moundsville*, 12 S. E. 859; *Burner v. Hevener*, 12 S. E. 861; *Grignon's Lessee v. Astor*, 2 How. 319, 337, quoting from and citing numerous decisions of the supreme court of the United States; *Voorhees v. United States Bank*, 10 Pet. 449.

"No principal is better settled than where a court once obtains jurisdiction of the persons of the parties, and of the subject-matter of the litigation, no matter if it may thereafter erroneously proceed, within the bounds of its jurisdiction, its decrees will be conclusive until reversed or annulled in some direct proceeding known to the law. The title acquired to property at a sale under such a decree by a stranger to the record will be upheld, although the decree may itself afterwards be reversed for *manifest* error. It is and has been the policy of the law to maintain judicial sales, and in this policy the public interest is best subserved." *Allman v. Taylor*, 101 Ill. 185; *Irwin v. Jeffers*, 3 Ohio St. 390; Freeman, Judgments, § 509; Schouler, Domestic Relations, § 361; *Thompson v. Tolmie*, 2 Pet. 169; *McPherson v. Cunliff*, 11 Serg. & R. 429; *Perkins v. Fairfield*, 11 Mass. 227. Jurisdiction for one purpose gives jurisdiction for all purposes. *Ex parte Parks*, 93 U. S. 18; *Cromwell v. Hull*, 97 N. Y 209; *Reed v. Reed*, 107 N. Y. 547; *Whitman v. Fisher*, 74 Ill. 147; *Brittain v. Kinnaird*, 1 Brod. & B. 432; Rorer, Judicial Sales, § 402. The judgment will bind persons having paramount title in severalty. *Kane v. R. R. Canal Co.*, 15 Wis. 179; *Blakeley v. Calder*, 15 N. Y. 619. Neither direct or collateral attack can be made on the sale for error, though apparent on the record. *Castleman v. Relfe*, 50 Mo. 587. Error will not avail to cancel title of purchaser. *Pursley v. Hayes*, 22 Iowa, 11.

United States homestead acquired during coverture is community property. *Pierce v. Frace*, 2 Wash. 81; *Brazee v. Schofield*, 2 Wash. T. 209; *United States v. Waddell*, 112 U. S. 76; *Philbrick v. Andrews*, 8 Wash. 7.

It is a conceded fact in this case that the patent to this land was actually issued to Kromer after the solemnization of the legal marriage between himself and Mrs. Kromer. This brings it within the rule laid down by this court and makes the land community property. Appellants' attempt to avoid the effect of this patent by invoking the doctrine of relation, by which they claim the title vested by the patent, relates back to the initiatory steps taken by Kromer

to secure his title. This doctrine of relation is a legal fiction. It
may be invoked when it is necessary to do exact justice, but will not
be invoked to do injustice. *Ellis v. Pomeroy Imp. Co.*, 1 Wash. 572;
*Gibson v. Chouteau*, 13 Wall. 92.

Under the community law of Washington, the husband is the
trustee of the community. *Sadler v. Neisz*, 5 Wash. 182. This trust
relationship becomes operative immediately upon the issuance of the
patent, and cannot thereafter be defeated by any act, either direct
or indirect, by the husband alone. *Brotton v. Langert*, 1 Wash. 73;
*Adams v. Black*, 6 Wash. 528; *Hill v. Young*, 7 Wash. 33.

The conveyance by will of community property passes only such
title as the devisor had a right to will. *Conn v. Davis*, 33 Tex. 203;
*Beard v. Knox*, 5 Cal. 252; and the widow is not estopped by accept-
ing legacy from claiming her interest. *Estate of Silvey*, 42 Cal. 210;
*Lewis v. Lichty*, 3 Wash. 213; *Toney v. Spragins*, 80 Ala. 541. Title
of one half interest vests in the survivor upon the death of the other
spouse. *Hill v. Young*, 7 Wash. 33; *Webre v. Lorio*, 7 South. 460.

Partition is a civil action. Code 1881, § 558; *Hancock v. Lopez*, 53
Cal. 362. Any questions affecting the right of the plaintiff to a par-
tition or the rights of each and all the parties in the land, may be
put in issue, tried and determined in such action. If disputes exist
as to their rights or interests in any respect, such disputes may be
litigated and determined in such action. *DeUprey v. DeUprey*, 27
Cal. 329; *Morenhout v. Higuera*, 32 Cal. 290; *Gates v. Salmon*, 35
Cal. 576; *Nash v. Church*, 10 Wis. 303.

"The judgment is final and conclusive between the parties, not
only as to the matter actually determined, but as to every other mat-
ter which the parties might have litigated and have decided, as inci-
dent to or essentially connected with the subject matter of the litiga-
tion, within the purview of the original action, either as a matter of
claim or of defense." *Clemens v. Clemens*, 37 N. Y. 74; *Bloomer v.
Sturges*, 58 N. Y. 176; *Danaher v. Prentiss*, 22 Wis. 299; *Tallman v.
McCarty*, 11 Wis. 401; *Blakeley v. Calder*, 15 N. Y. 617; *Howell v.
Mills*, 56 N. Y. 226. As to what is a trial on the merits, see Free-
man, Judgments, § 260; *Jordan v. Van Epps*, 85 N. Y. 436; *Dana-
her v. Prentiss*, 22 Wis. 299.

Guardian had power by statute to confess judgment. Code 1881,
§§ 292, 2. He could consent to partition without suit, under the su-
pervision of the court. Code 1881, §§ 598, 1626, 1611.

Minors are bound by the same rules as adults. An infant is bound
by the conduct of his case by his solicitor. In the absence of fraud
or collusion, minors properly represented are bound as fully as if
they had been majors and personally cited. "Representation in

courts of justice is a necessity of civilized society and the acts or neglects of the representative must in some degree be binding upon the party represented. And persons under disability at the time of a judicial proceeding to which they are parties, represented by their guardians and agents, are bound upon the knowledge of such guardians or agents." 1 Herman, Estoppel, § 164 ; 1 Daniel, Ch. Prac. (5th Am. ed.) 163, 164 ; *English v. Savage,* 5 Or. 518. " Infants are as much bound by the conduct of those who conduct their case as adults, provided their conduct be bona fide. And it has been held that although the rule is that the evidence must be taken upon interrogatories and not upon affidavits, yet, if the solicitor for the infant assents to and acquiesces in the mode of proceeding, the infant will thereby be bound." *Ralston v. Lahee,* 8 Iowa, 17 ; *Tillotson v. Hargrave,* 3 Mad. 494. This quotation is directly applicable to the stipulations entered into in the presence of the court, both in the better investment proceeding and the partition proceeding, as to what were the undisputed facts in the case. An attorney may waive formal proof. Wood, Practice Evidence, § 170 ; 1 Greenleaf, Evidence, § 178 ; *Alton v. Gilmanton,* 2 N. H. 520 ; *Young v. Wright,* 1 Camp. 140. " Any fact bearing upon the issues involved admitted by counsel may be the ground of the court's procedure equally as if established by the clearest proof." *Oscanyan v. Arms Co.,* 103 U. S. 263. In *Hollis v. Dashiell,* 52 Tex. 187, the judgment was attacked as fraudulent, because it appeared to have been entered by consent and agreement of a guardian *ad litem.* " This proposition can not be maintained on authority and has been expressly negatived by this court." *Gunter v. Fox,* 51 Tex. 383 ; *Bennett v. Hamill,* 2 Sch. & Lef. 577 ; *Joyce v. McAvoy,* 31 Cal. 273.

" If an absolute decree is made against an infant, he is as much bound as a person of full age, and will not be permitted to dispute the decree, except upon the same ground as would be available if he were an adult." Freeman, Judgments, § 151 ; *Hurt v. Long,* 16 S. W. 968 ; *Payne v. Masek,* 21 S. W. 751 ; *English v. Savage,* 5 Or. 518 ; *Green v. Walker,* 12 S. W. 353.

Fraud must be actual and positive. " A fraud which will justify equitable interference in setting aside judgments and decrees, must be actual and positive and not merely constructive. It must be that which occurs in the very concoction or procuring of the judgment or decree, and something not known to the opposite party at the time, and for not knowing which he is not chargeable with negligence." *Ross v. Wood,* 70 N. Y. 10 ; *Foster v. Wood,* 6 Johns. Ch. 87. The facts constituting a fraud must be proved. They will never be presumed. That the claim of the plaintiff was unfounded, is not sufficient. *Smith v. Nelson,* 62 N. Y. 287 ; *Cromwell v. Hull,* 97 N. Y. 209. The conduct of the partition case by the defendants through

their guardian and his counsel, even though negligent, will not avail the plaintiffs herein. *Jones v. Leech*, 46 Iowa, 186; *Quinn v. Wetherbee*, 41 Cal. 247; Freeman, Judgments (4th ed.), § 508. "If the fact that the counsel were mistaken in the law were a good ground for relief in equity, the judgment at law would be of little value." *Richmond & Petersburg R. R. Co. v. Shippin*, 2 Pat. & H. 327; *Green v. Dodge*, 25 Am. Dec. 736.

*Brown & Brownell*, for respondents Hewitt and Everett Land Company.

The opinion of the court was delivered by

Scott, J.—The plaintiffs have appealed from a decree of the superior court of Snohomish county dismissing their complaint, and adjudging in effect that they have no title to the property in controversy, which is a certain tract of land, of about 147 acres, in the present city of Everett. The complaint set up title in fee in the plaintiff, Victor E. Kromer, with subsidiary interests for a limited period in his three sisters, Emma and Mattie Kromer, who were joined as plaintiffs, and Alice Kromer, who declined to join as plaintiff, and was made a defendant. The title is claimed by the plaintiffs through their deceased father, Erskine D. Kromer, by will. The complaint attacks, and seeks to vacate on the grounds of lack of jurisdiction and fraud, a decree of sale and deed in partition in said court under which the defendants, Rucker and Hewitt, and the Everett Land Company, intervenor, claim title in fee to certain interests in said lands, and joins the defendants Friday, Holland and Plaskett on account of their connection with said partition and participation in the alleged fraudulent proceedings. The answers of the defendants Rucker and Hewitt, with their counterclaims, and the intervening complaint of the Everett Land Company, set up the validity of the partition proceedings which originated in an alleged community right in the lands in controversy in the widow of Erskine D. Kromer, who is the defendant Emma Holland.

The material facts relating to the matters in controversy are as follows:

On May 3, 1870, said Erskine D. Kromer made a home-

stead filing upon the land aforesaid, situate in Snohomish county, Washington. It is claimed that he was at that time a single man, but at or about said time (the exact time not being material), a certain Indian woman who had previously been known by the name of Emma Kanouke, and who was thenceforth known as Emma Kromer, came to live with him as his wife, and continued to live with him until his death, in 1885. The plaintiffs and said Alice Kromer are their children.

On October 26, 1876, said Erskine D. Kromer made the requisite proofs of his capacity to file and compliance with the laws of the United States relating to such homestead entry. On December 21, 1876, he and said Indian woman appeared before a justice of the peace of said county, and had a marriage ceremony performed. On December 30, 1876, a patent for said land was issued to him. At his death he left the following will purporting to devise the land in controversy:

"I will, bequeath and devise to my beloved son, Victor E. Kromer, the land upon which myself and family reside, situated in said county of Snohomish, Washington Territory, to-wit: Lots numbered one and two, the southeast quarter of the northwest quarter, and the northwest quarter of the northeast quarter of section thirty, in township twenty-nine, north of range five east, containing one hundred and forty-seven acres and 55-100 of an acre. It is my will and desire that my family be not separated, and it is my intention that my said son, Victor E. Kromer, shall not sell or dispose of said described premises until each of my daughters shall become of full age, viz: Alice Kromer, Mattie Kromer and Emma Kromer, and that they shall each have the privilege of residing upon said premises until they shall each become married, provided they should marry before they shall have arrived at the age of majority, and it is my desire that the rents, issues and profits of said described premises shall go to support my said son and daughters hereinbefore mentioned until said girls shall have become married or arrived at the age of majority, at the expiration of which time my said son, Victor E. Kromer, is hereby empowered to dispose of said premises as he shall see fit.

    *    *    *    *    *    *    *    *    *

Third. I give and bequeath unto my wife, Emma Kromer, the sum of two hundred dollars, which my executor is hereby authorized to pay at my death. And it is my will and desire that my said wife, Emma Kromer, reside upon the premises hereinbefore mentioned and bequeathed to my said son, Victor E. Kromer, until her death or marriage.

\*      \*      \*      \*      \*      \*      \*      \*      \*

I nominate and appoint my respected friend, J. H. Plaskett, my executor and authorize him to administer upon my estate and to execute this will without giving bond, and without any direction or control from any court and without notice to creditors or otherwise."

This will was probated September 10, 1885. Said J. H. Plaskett qualified as executor, and a copy was filed in the auditor's office for record in October, 1885. On September 23, 1885, said Plaskett was appointed guardian of the persons and property of said children and has ever since served as general guardian of their persons and property. On October 25, 1886, the final account of said Plasket as executor was allowed by the probate court, and distribution made of the real and personal property willed by the deceased. There is some contention as to whether the widow was a party to this proceeding, but we do not regard it as material, and the plaintiffs practically concede that it is not.

On December 14, 1889, said Plaskett as guardian filed a petition in the probate court, praying for the sale of the real estate in controversy, alleging such facts as the statute required to authorize a sale by a guardian of his minor ward's real estate. It was claimed that the real estate was unproductive, and that there were no funds to pay the taxes thereon or to support the children, and that it would be for the advantage of said children to have the same sold. Upon the hearing of this petition, on January 27, 1890, the widow of Erskine D. Kromer, who had previously to that time married one Holland, appeared and filed objections to the order and asked for partition, claiming, among other things, that the land in controversy was community property of herself and said Erskine D. Kromer, and that she was entitled to one-half thereof as the surviving spouse. The probate

court found against her, and entered an order directing a sale of all of the land. On January 28, 1890, she filed a notice of appeal from said order and judgment of the probate court. This appeal was heard in the superior court of Snohomish county on the 24th day of March, 1890, whereupon the court found and adjudged as follows:

" The court finds that the real estate described in the petition of said guardian for an order of sale thereof, and which said probate court ordered to be sold as prayed for in said petition, is community property, and as such, the said appellant, Emma Holland, formerly widow of Erskine D. Kromer, deceased, is entitled to the undivided one-half thereof, and that the said probate judge or probate court had no right to order the sale of the entire property, or any part thereof, in the manner in said transcript shown.

" It is therefore ordered, adjudged and decreed by this court, that the order of sale, and judgment rendered by said probate court below, is reversed, set aside and held for naught."

But the court made no finding or order as to a partition.

It is contended that the court could not have found upon the facts that said parties were husband and wife prior to the marriage ceremony which was performed between them by the justice of the peace, and that said ceremony was evidence that they were not married prior thereto. There is no doubt that it was some evidence of the fact that the parties had not been previously married, but it was not conclusive. Said parties may possibly have entertained a doubt as to the validity of a previous ceremony, and may have wished to set that doubt at rest by such subsequent ceremony. It does appear that they had lived and cohabited together and held each other out as husband and wife for a number of years. It is true this would not constitute a marriage under the laws of the territory, but it was some evidence of marriage, and in making his homestead proofs said Kromer testified that he was the head of a family, and submitted the affidavits of two of his neighbors that he was a married man. The parties were all before the probate court in said proceeding brought by the guardian for authority to sell the land for the purposes therein

set forth, for a better investment of the proceeds, etc., and were likewise before the superior court upon the appeal therefrom by the widow, and the court having found therein that said Erskine D. Kromer and said woman with whom he was living were lawfully married, and that the land was the community land of said parties, and there having been no appeal prosecuted therefrom, that decree must stand if the court had jurisdiction to make the finding. And it would make no difference whether it was an erroneous finding of fact or of law. It would be the law of the case as applied to the lands in question and conclusive upon the parties. The jurisdiction of the court to find that said parties were husband and wife, and that the land was community property is strenuously attacked by the plaintiff, and contended for by the defendants. It raises a most important question as to the power of the former probate courts of the territory, and of the superior courts of the state upon such appeal. The fact that the proceedings were had in the probate court while we were under a territorial form of government, and in the superior court of the state after statehood, might have some bearing also as to whether the latter court upon the appeal was limited by the powers possessed by the former court. A decision of these questions is not necessarily involved in this case, as we view it, and we shall refrain from deciding them at the present time, but have set forth the facts as having some bearing upon the later proceedings.

Subsequent to the foregoing, and on April 7, 1890, said widow executed and delivered to defendant Friday a quit-claim deed of her undivided one half of the land. On May 12, 1890, said Friday began an action for partition in the superior court of Snohomish County, alleging, in substance, in his complaint, the filing upon the lands in controversy by said Erskine D. Kromer, and his compliance with the United States homestead laws ; that during all of said times he was a married man, and that his wife, said Emma D. Kromer, lived with him upon said land ; that he died testate ; that the children aforesaid were the issue of said marriage and were living at the time of his death ; the appointment of the

said Plaskett as guardian, the interests of the children therein to an undivided one-half of said lands, and his ownership of the other by virtue of the conveyance from the widow ; that the land was so situated and its condition such that a division could not be made without great prejudice to the owners, and praying that the court ascertain and determine the interests of each of said parties, and that partition thereof be had, and in case it could not be made, etc., then that the land be sold and the proceeds paid to the several owners in proportion to their respective interests. Summons was issued upon this complaint, and was personally served upon all of said children and upon said Plaskett, as guardian. On June 6, 1890, a firm of lawyers appeared for said defendants, and filed a general demurrer to the complaint. It does not appear what disposition was made of this demurrer, but on the 3d day of July, 1890, an answer was filed in that action, denying the sale by the widow to the plaintiff Friday and that the real estate was so situated that it could not be divided without great prejudice to the owners, and by way of counter-claim set up the payment by them of taxes for several years upon all of said land, and that one-half of said sums was a just claim against the interest and claim of the plaintiff, etc. On the 3d day of July the court rendered the following decree :

"This case coming on by agreement of the parties hereto on this 3d day of July, 1890 before the honorable J. R. Winn, judge of said court, at his chambers in Snohomish City, in said county and state, the plaintiff appearing by Craddock & Miller, his attorneys, and the defendants appearing by Frater & Ault, their attorneys, and said minor defendants also appearing by J. H. Plaskett, their guardian, and the court being fully advised in the premises, finds from the pleadings and evidence submitted the following :

Findings of fact : 1. That prior to the 30th day of December, 1876, one Erskine D. Kromer, having complied with the laws of the United States, became the owner in fee simple of the following described property, to-wit :

Lot one (1) and two (2) and the northwest quarter of the northeast quarter ( NW ¼ of NE ¼ ) and the southeast quarter of the northwest quarter ( SE ¼ of NW ¼ ) of sec-

tion No. thirty (30), in township No. twenty-nine (29)
north of range No. five (5) east Willamette Meridian, situ-
ated in Snohomish county, state of Washington, and on said
last mentioned date a patent was issued to said Kromer
under the homestead laws of the United States, of said
lands, that prior to that time said Kromer resided upon said
tract and had entered the same as a homestead upon public
lands of the United States, that the said Erskine D. Kromer
was a married man, and thereafter while residing upon said
lands and during all the time of his said residence upon said
tract was there living with his wife, Emma D. Kromer.

2.   That on or about the 8th day of August, 1885, the
said Erskine D. Kromer died testate in said county and in
the then territory and now state of Washington; and that
the above described tract of land was a portion of the estate
of said decedent.

3.   That at the time of the death of said Kromer there
were living as the issue of his said marriage, the following
children, to-wit:   Victor E. Kromer, Emma Kromer, Mat-
tie Kromer and Alice Kromer, who has since intermarried
with one Lloyd Allen, who are heirs at law of said Erskine
D. Kromer, deceased; that the only other heir at law of said
decedent is his said wife surving him, whose name at the
time of his decease was Emma D. Kromer, but who has
since re-married and who is now and has been for a long
time past, Emma D. Holland, wife of Samuel S. Holland.

4.   That prior to the commencement of this action the
said Emma D. Holland, for a valuable consideration, sold
and by deed duly conveyed to the plaintiff herein, an un-
divided one-half ( ½ ) interest in and to all of the above de-
scribed tract of land; and that the said plaintiff is now the
owner of said undivided one-half of said real property, and
is in possession thereof.

5.   That after the death of the said Erskine D. Kromer,
the above named defendant J. H. Plaskett was duly ap-
pointed guardian of the persons and estates of the above
minor children of the said Erskine D. Kromer and Emma
D. Kromer, his wife, and duly qualified as such and ever
since the time of his said appointment, said J. H. Plaskett
has been and now is the guardian of the said minor children.

6.   That said plaintiff and said minor children and heirs
at law of said decedent, viz:   Victor E. Kromer, Emma
Kromer, Mattie Kromer and Alice Allen, are the owners and
tenants in common of the above described tract of land, as
follows, to-wit:   The said plaintiff, Frank P. Friday, has

an estate in said lands to the extent of an undivided one-half part or interest in fee thereof; the said minor defendant Victor E. Kromer has an estate of inheritance in said real estate to the extent of an undivided one-half ( ½ ) part or interest in fee thereof; and the other minor defendants, Emma Kromer, Mattie Kromer and Alice Allen have a contingent interest in said real estate above described, to the extent of the right of said minor defendants, Emma Kromer, Mattie Kromer and Alice Allen, to live, reside and remain on an undivided one-half part thereof until they become of lawful age or until they become married.

7. There are no liens or incumbrances on said lands appearing of record, and that no person other than the said plaintiff and the defendants hereinbefore named have any interest in said lands as owners or otherwise.

8. That said real estate is so situated and its condition is such that a partition thereof cannot be made without great prejudice to said owners.

9. That said defendant J. H. Plaskett, as guardian, has paid the taxes on said lands for the years 1885, 1886, 1887, 1888 and 1889.

And upon the above and foregoing findings of fact, the court finds the following conclusion of law:

That said premises should be sold and the proceeds arising from the sale thereof be divided according to the respective rights of the parties hereto as found by the court, and that an order of sale issue therefor.

It is therefore ordered, adjudged and decreed, in accordance with the foregoing finding of facts and conclusion of law, that the said real estate he sold at public auction to the highest bidder, in the manner prescribed by law, upon the following terms, to-wit:

One-half of the purchase price to be paid cash in hand on the day of the sale, the balance in two equal installments payable in nine (9) and eighteen (18) months respectively, with interest on the deferred payments at the rate of ten per cent. per annum, and secured by mortgage on said premises; and that A. W. Hawks, Esq., be and he is hereby appointed referee to sell said real estate, and of his proceedings hereunder to make due return."

Notice of sale of the land was posted and published by the referee appointed to make the sale, and the same was sold to said Friday for the sum of thirteen thousand dollars, on August 2, 1890. A stipulation was thereafter entered

into between the parties relative to certain security taken for
a portion of said sum, and the sale was duly confirmed, and
thereafter on the 21st day of August, 1890, the referee, pur-
suant to such proceedings and sale, executed and delivered
a deed of the land to Friday, which was, on the 25th day of
said month, duly approved by the court.   On the 28th day
of November, 1890, Friday executed a deed of an undivided
one-half of this land to the defendants Rucker, and on the
same day executed and delivered to defendant Henry Hew-
itt, Jr., a deed of the other undivided one-half, which inter-
est was subsequently conveyed by Hewitt and wife to the
Everett Land Company.   No appeal was taken from the
decrees of the superior court in any of the foregoing pro-
ceedings by any of the parties interested or at all, and the
same remained unquestioned until the commencement of this
action in December, 1891.

Many points have been raised and argued in the case
which we think unnecessary to pass upon, owing to the con-
clusion we have reached with regard to others.   And before
proceeding to discuss the matters of law involved in the
various proceedings, we wish to dismiss the charge of fraud
as utterly unfounded, as, after an examination of the argu-
ment with reference thereto, contained in the six hundred
and sixty odd pages of briefs filed in this case, and the evi-
dence upon which it is based, found in the three large vol-
umes of the record, we are satisfied that all parties, includ-
ing the courts and guardian, acted in entire good faith in the
premises.   A lengthy discussion of the questions raised with
reference to this feature of the case would serve no good
purpose.   The several proceedings must be viewed in the
light which surrounded them at the time they were had,
and although the land in question has now become very val-
uable by reason of the fact that a prosperous city is being in
part built thereon, and that several hundred thousand dol-
lars have been expended in improvements upon the same by
the purchasers and their grantees, all of which have been
projected and done since the sale under the partition pro-
ceedings, it is apparent that at the time the land was sold

thereunder it brought a high price, which was due in a measure to an unsuccessful "boom," that was independent of the matters which have since given value to the land. Even though the parties purchasing had an undisclosed purpose of platting a townsite thereon and were endeavoring to obtain the land for that purpose, it is apparent that the same would not have been carried out if the supposed title had not been procured, and, had it not been for these subsequent developements, undoubtedly the sale would have been regarded as a fortunate one, and the proceedings would not have been questioned.

Although Erskine D. Kromer in his will sought to provide for the retention of the land until his daughters had arrived at the age of majority, the court clearly was not deprived of power to order a sale thereof in the partition proceedings, if the land was community property, as the will would only operate to convey the title to a one-half interest. The land at that time was practically in a wilderness and was unproductive, and was, it seems, in danger of being sold for taxes, and there were no funds available for the support of the minors. It was as much the intention of the deceased parent that the children should be supported during their minority as it was to preserve the land intact. However, as to this feature of the case it is sufficient to say that the land was not sold upon the application aforesaid of the guardian of the plaintiffs, but was sold by virtue of the independent partition proceeding brought by the alleged owner of the other half interest, against which claimed interest, if well founded, the will could not in any wise operate.

There being no fraud in the premises the claims of the plaintiffs in this case must be sustained, if at all, on the ground of the invalidity of the various proceedings above set forth by virtue of which the land was found to be community property and was sold to the defendants now claiming it.

Questions of estoppel against the plaintiffs, and claims that the defendants, or some of them, are *bona fide* purchas-

ers without notice have been presented, which we pass over as immaterial and treat the case as though all of the defendants had full notice of all the foregoing proceedings.

In the proceedings brought for a partition of the land by virtue of which it was sold, the court had jurisdiction of the plaintiffs in this case, and of the subject matter. It was there found that Friday owned a one-half interest in the land, and its sale was ordered, and had accordingly. These proceedings are attacked on the ground that the statute was not complied with in advertising the sale. The first publication of the notice of sale was made on the 3d day of July, and the decree was not signed until the 7th. As a matter of fact, however, the finding of the court had been made prior to the publication, and the point raised is nothing more than an irregularity which would not affect the jurisdiction of the court in the premises. It could only be taken advantage of by an appeal in the proceedings, if at all, and none was taken.

Complaint is also made that the guardian and attorneys of record for the plaintiffs herein admitted in that proceeding that the land in controversy was the community property of said parents; and it is contended that they had no right to make such admission, and that the same is an evidence of bad faith and of fraud in said proceedings. It must be borne in mind that this last proceeding was in the same court which heard and disposed of the appeal from the order of sale made by the probate court on the application of said guardian to sell, and the same judge was presiding. All parties were acting in a measure in view of said former proceeding; and that proceeding, even if invalid, throws a strong light upon the good faith of all parties whose acts are now questioned.

We are satisfied that such admissions were made in entire good faith, and were such as the parties had a right to make and the court was justified in acting upon; and furthermore, that they in no wise contravene the facts as they existed independent of such former proceedings. Witnesses were examined in this case as to what took place, what was

admitted and what testimony was introduced in such former proceedings, and the judge before whom they were had was called and testified, and said that he based his judgment on what he supposed was sufficient to justify the decree which he signed. There is no testimony in this record tending to show that any person connected with the defense of that partition case was not as fully informed of every existing fact connected with the subject matter of that litigation as this court is capable of being informed by the record before it, and there is absolutely no hint in the testimony, that the plaintiff in that case or any person in his behalf, did anything to mislead the legal representatives of those defendants, or to conceal from them any fact, or did anything in any way to prevent a fair trial. If, as claimed by appellants, the question of title was heard, in part, upon an agreed statement of facts, they were the true facts in the case. Plaintiff's counsel produced in court the deed on which plaintiff relied to prove his title. He also produced in court sufficient testimony to convince the court of the necessity of selling the premises. The sale of the property followed in accordance with the decree of the court. The plaintiff in the partition proceeding was the purchaser. The defendants, through their counsel and otherwise, employed every means to make the property bring the highest possible figure. This commendable zeal had its effect, and the testimony stands undisputed that the sale was in all respects fairly conducted, that there was a lively rivalry between the bidders and that the land brought the highest estimate of its value.

Partition is a civil action in contemplation of our code, and may be used as a form of action to try title.

"The rights of the several parties, plaintiffs as well as defendants, may be put in issue, tried and determined in such suit, and where a defendant fails to answer, or where a sale of property is necessary, the title shall be ascertained by proof to the satisfaction of the court, before the decree for partition or sale is given." Code 1881, § 558.

The Code of California provides that any right, title or

interest in the land may be put in issue, tried and deter-
mined in the action, substantially in the language above
quoted from our own code. The determination of the fact
of title by the court is held to be conclusive upon all the
'parties to the suit. *Hancock v. Lopez*, 53 Cal. 362–371.

"Any questions affecting the right of the plaintiff to a
partition, or the rights of each and all of the parties in the
land, may be put in issue, tried and determined in such
action. * * * If disputes exist as to their right or in-
terest in any respect, such disputes may be litigated and
determined in such action." *De Uprey v. De Uprey*, 27 Cal.
329 (87 Am. Dec. 81) ; *Morenhout v. Higuera*, 32 Cal. 290;
*Gates v. Salmon*, 35 Cal. 576 (95 Am. Dec. 139) ; *Nash v.
Church*, 10 Wis. 244 (78 Am. Dec. 678).

This court in *Hill v. Young*, 7 Wash. 33 (34 Pac. 144),
has held that the court has power in a partition proceeding,
and is required, to determine title.

"The judgment or adjudication is final and conclusive
between the parties, not only as to the matter actually
determined, but as to every other matter which the parties
might have been litigating and have had decided, as incident
to or essentially connected with, the subject matter of the
litigation and every matter coming within the legitimate
purview of the original action, both in respect to matters of
claim and of defense." *Clemens v. Clemens*, 37 N. Y. 59 ;
*Bloomer v. Sturges*, 58 N. Y. 168 ; *Danaher v. Prentiss*,
22 Wis. 299 ; *Tallman v. McCarty*, 11 Wis. 420 ; Wells,
*Res Adj.*, § 248 and 249 ; *Barrett v. Failing*, 8 Or. 152 ;
*Trayhern v. Colburn*, 66 Md. 277 ; *Pray v. Hegeman*, 98
N. Y. 351 ; *Blakeley v. Calder*, 15 N. Y. 617 ; *Howell v.
Mills*, 56 N. Y. 226 ; *Sayward v. Nunan*, 9 Wash. 22 (36
Pac. 966).

When the plaintiff alleged the extent of his interest in
the property, and the extent of the defendant's interest as
he understood it, and showed on the face of his pleading
that the parties, plaintiff and defendant, were tenants in
common, he stated every fact required to give the court
jurisdiction. Code 1881, § 553.

Appellants seek to avoid the effect of this proceeding by
reason of the minority of the defendants in the partition
suit, and by reason of the fact that the plaintiff was the

purchaser. These defendants had a general guardian, on whom service was made, as well as upon themselves personally. He answered to the suit, and was represented by counsel throughout. The statute expressly provides that the action may be maintained against infant cotenants, the provisions being broad enough to reach any and all interests, and any and all parties, and expressly makes a confirmation conclusive against all parties to the suit. The guardian might consent to a partition without suit under the supervision of the court. Code 1881, ch. 48.

"In America, the rule of the common law that infancy does not suspend the right of the adult cotenants to enforce a partition is believed to be of universal obligation. This rule has been held to be applicable to a sale of the property, when a division was impracticable. The right of the adults to have the possession of their property, and to have their wishes in the premises gratified, is to be respected equally with the interests of the infants. It would be monstrous to hold that adult part owners should be kept out of the enjoyment of their property merely because the other part owners were infants, and the interests of such infants did not require the property to be sold." Freeman, Cotenancy and Partition (2d ed.), § 467 ; *Albright v. Flowers*, 52 Miss. 246.

In the absence of fraud or collusion, minors properly represented are bound as fully as if they had been majors and personally cited.

"Representation in courts of justice is a necessity of civilized society, and the acts or neglects of the representative must in some degree be binding upon the party represented. And persons under disability at the time of a judicial proceeding to which they are parties, represented by their guardians and agents, are bound upon the knowledge of such guardians or agents." 1 Herman, Estoppel, p. 178, § 164 ; 1 Daniel, Chanc. Prac. (5th Am. ed.), 163 and 164 ; *English v. Savage*, 5 Or. 518.

In considering the character of the title, as to whether it was community land as a matter of fact, a question is raised as to when the title vested in Erskine D. Kromer. Final proof was made by him before the marriage ceremony aforesaid was performed, but the patent was issued thereafter.

41-10W

Although, for certain purposes, the title, at least the equit-
able title, was earned and accrued upon the making of final
proof and receipt of the certificate, the full, or legal, title
did not pass until the patent was issued.   The plaintiffs
claim that the patent should relate back to the time of mak-
ing final proof, and that therefore the land vested in Erskine
D. Kromer as his separate property, if in fact he was not
then a married man.   Undoubtedly, for certain purposes
this would be true, but the doctrine of relation is a fiction
of law adopted by courts solely for the purposes of justice.
*Gibson v. Chouteau,* 13 Wall. 92.   We are of the opinion
that it should not be invoked in this case to defeat the
claims of the widow.   Her equities were as great as those
of Erskine D. Kromer, or the children.   It may fairly be
inferred from all that transpired that there was no intentional
wrong-doing upon the part of either of said parties; and
that they were living together and regarded each other as
husband and wife is apparent prior to the marriage cere-
mony aforesaid , and if necessary to save her rights in the
premises we are satisfied that we would be justified in hold-
ing, and should hold, that the legal title having passed
subsequent to the marriage of the parties, it vested in the
community.

A further question is raised, to the effect that the title to
the land under the homestead laws is taken by gift, and
consequently that it would become the separate property of
the husband under the laws of the territory.   There seems
to be some conflict in the authorities upon this proposition.
As the matters hereinbefore discussed decide this case in
favor of the defendants, we will not undertake to enter into
any consideration of the cases bearing upon this question,
but content ourselves with saying we are satisfied that within
the intent of our laws relating to community property, such
land is in effect taken by purchase, by reason of the settle-
ment and improvements thereon, in which the wife partici-
pates as well as the husband; and consequently, that this
land was the community property of Erskine D. Kromer
and his said wife.   We adopted this view in the case of

*Philbrick v. Andrews*, 8 Wash. 7 (35 Pac. 358); and al-
though the point was not contested there, we desire to
announce our adherence thereto, A contrary holding would
be productive of the grossest injustice under the community
property laws of this state and territory.

Judgment affirmed.

DUNBAR, C. J., and HOYT, J., concur.

STILES, J. (*dissenting*).—I think the view which the
court takes of the actions of the principal respondents in this
case, is entirely too charitable. The opinion makes it appear
as though Friday and the Ruckers had been mere passive
movers in the transactions which led up to the practical annul-
ment of the will of Erskine D. Kromer, and the despoiling of
his children of the property which their father had devoted,
first, to their residence and maintenance, and lastly to the
use of his son Victor. Kromer, Sr., died in 1885, and his
widow accepted the bequest made to her, and suggested no
claim of interest in her for more than four years. Mean-
while the will was proven, administration had, and distribu-
tion made in accordance with the terms of the will. In 1889
the Ruckers appeared and by their urgency and offers suc-
ceeded in moving the guardian to apply for an order of sale.
They had already bought up all of the surrounding lands,
and were exceedingly anxious to acquire the Kromer tract
which was the key to the situation, commanding as it did
the principal water front in the present city of Everett. To
bring about the application of the guardian to sell they put
$150 into the hands of his attorney to cover the costs of the
proceedings, and agreed to bid $2,000 for the land. The
bait took, and the application was made. At this time there
was no occasion for selling, as the family had the land to live
on, and the guardian had money enough in his hands to last
nearly two years. Moreover, there was no legal warrant
whatever for selling the land under any circumstances, since
its condition was fixed by the will.

The interference of the late Mrs. Kromer had the effect to
postpone the proceedings, but her attempt to secure recogni-

tion from the probate court was a proceeding without color of legality, since that court had long since lost jurisdiction of the matter of distribution by its final decree of distribution which was unappealed from. Any order which that court might have made in the matter would have been wholly void. So, also, the appeal to the superior court could and did determine nothing, since on appeal the latter court had no power to determine a matter not within the jurisdiction of the probate court ; all that the superior court could do was to dismiss the appeal for want of jurisdiction in the probate court over the subject matter. The net result of these judicial performances was to leave the entire estate where the will and the decree of distribution placed it, without a valid pen-scratch either for or against it.

The next operation was the conveyance by Mrs. Kromer to Friday. Now, a great endeavor was made in the course of this voluminous case to show that Friday and the Ruckers were independent individuals, but I am convinced that they were simply shadows of one substance. The Ruckers put up every dollar from first to last, Friday being their instrument and factotum.

Next came the partition. Friday presented his petition, the exact language of which will be found in the so-called finding of facts quoted in the foregoing opinion. Now, let it be remembered that there had never been any sort of an adjudication that Mrs. Kromer was the owner of one-half, or any other interest, in this land ; on the contrary, the decree of distribution, which was binding upon her and unappealed from, was squarely against any such proposition. And yet, the petition for partition did not mention the will, or the decree of distribution, but falsely alleged the ownership of the land and the interests of the children to be as stated in par. 6.

And to crown everything, the guardian of these infant children came in and assisted the fraud that was being perpetrated upon the court and his wards, by admitting in the answer every one of these false allegations, without mentioning the actual condition of the title, or the will. He did

set out some pitiful allegations about payment of taxes, and denied that a sale was necessary ; and upon these as the sole issues the matter came on for hearing. And of what did this hearing consist? The guardian was there, of course, with his attorney, but there was no hostility in the proceeding. Counsel for the petitioner was there with a witness or two, and findings and decree already drawn in the exact language of the petition. No question was asked of any witness about any matter other than whether the land could be divided or ought to be sold. The judge who made the decree so testifies, and the findings declare that the alleged facts are found "from the *pleadings* and evidence submitted."

And thus, upon the admissions of the guardian, without trial, and without knowledge on the part of the court that there could be any issue over the title to the land, the decree was rendered, finding that 147 acres of wild land could not be divided into two fairly equal parts, but must be sold. Of course it must be sold ! That was the entire object of the scheme from A to Z. And of course Friday was the purchaser, on time ; and he at once conveyed half of his purchase to the Ruckers, and pocketed $6,000 profit within sixty days by a sale to the Everett Land Company. It only remained to carry out this *judicial* proceeding by allowing the attorney for the guardian $500 out of the proceeds of the sale of these infants' lands, and giving the Ruckers an execution against them for the $150 advanced to start the guardian's application to sell. If these be fair dealings between fair men and infants, then Heaven help the children of the state when they fall into the hands of rogues !

The following legal propositions, I maintain, should have all been decided in favor of the appellants :

1. The full equitable title to the land having been acquired by Kromer before his marriage, it was his separate property.

2. Mrs. Kromer was bound by the decree of distribution, unless in some direct proceeding she asserted her interest.

3. The probate proceedings and appeal were void.

4.  It was beyond the power of a guardian to admit away the title of his ward by answer in a partition proceeding.  A guardian in such a case is not called upon to answer further than to put his opponent upon proof of every allegation.  It has been held, always and everywhere, that while upon the *trial* of a case a guardian or his attorney may admit probative facts, neither of them can admit ultimate facts, and to do so is a fraud upon the ward.  Formerly, and even now in some of the states, an infant might, after coming of age, set aside a decree for error even; and fraud, either in fact or law, is a just ground for such relief.  *Bank of U. S. v. Ritchie,* 8 Pet. 128 ;  *Daingerfield v. Smith,* 83 Va. 81 (1 S. E. 599); *McIlvoy v. Alsop,* 45 Miss. 365 ;  *Curtis v. Ballagh,* 4 Edw. Ch. 635 ;  *Loomer v. Wheelwright,* 3 Sandf. Ch. 135 ; *James v. James,* 4 Paige Ch. 115 ;  *Price v. Crone,* 44 Miss. 571 ; *Tucker v. Bean,* 65 Me. 352 ;  *Fisher v. Fisher,* 54 Ill. 231 ; *Eaton v. Tillinghast,* 4 R. I. 276 ;  *Chaffin v. Kimball's Heirs,* 32 Ill. 36 ;  *Ingersoll v. Ingersoll,* 42 Miss. 155 ;  *Claxton v. Claxton,* 56 Mich. 557 ;  *Ralston v. Lahee,* 8 Iowa, 17 (74 Am. Dec. 291).

In *Joyce v. McAvoy,* 31 Cal. 274 (89 Am. Dec. 172), Judge Sawyer learnedly reviewed the origin and principle of the *parol demurrer,* and showed it to have no application to the state of California, because there was no statute ; and he also found the doctrine not pertinent to the case because the attack was collateral and not by appeal or review.

But we have a modified statute of *parol demurrer* in Code Proc., § 1393, which in subd. 8 expressly provides for the vacation of a judgment against a minor for *error* within one year of his coming of age.  Under this provision, the question of the title not having been in issue, or considered by the court, I maintain that the partition decree should have been set aside, and that matter determined.  At bottom, the only point we have to consider here is :  Was there error ? If there was, the statute regulates the matter by requiring a new hearing.  As it is, this court has taken up the original case and decided it upon equitable grounds which were in no proper way before it.

The opinion of the court quotes the partition statute, which authorizes title to be put in issue in such proceedings; but the trouble is that in this case it was not put in issue, the petition of Friday fraudulently concealing from the court the fact that there was any question of title, and the answer of the guardian assisting the fraud by its admissions. Authorities are cited to show that whatever might have been decided in a litigated case will be taken as actually decided; but in partition, unless the defendant answers, title must be shown. Code 1881, § 558. In substance there was no answer in this case, for what was answered was merely illegal admission. Guardians may consent to partition without suit, as pointed out, *under supervision of the court*; but in such cases the court is the counsel of the guardian, and must be satisfied that the proposition is fair, the title certain, and the division just. But here the proceeding ought to have been hostile, whereas it was, in fact, collusive. Moreover, the statute does not permit a guardian to consent to partition by sale.

I have not had to pass upon a case which so profoundly impressed me with a conviction of legal wrong as this. Not, perhaps, that a sufficient price was not obtained for this land; but that the door has been opened whereby speculators, casting their covetous eyes upon the property of infants, may be enabled, by seemingly fair propositions, and by holding out tempting offers to guardians who would rather handle money than be bothered with land, to evade the solemn provisions made by a deceased father for his children. If the courts sit passively and let guardians confess away the estates of their wards in this way, no estate is safe, and a man who makes a will might as well save himself the trouble.

Above all, in this case there was absolutely no occasion for causing this land to be sold; for I undertake to say that there is not a tract of land of that size in the state of Washington which cannot be fairly divided into two parts of equal value. The partition proceeding was a sham, initiated by the first approach of Rucker to the guardian, with his offer

of $2,000, and $150 for expenses ; and if its consummation is ratified, it crowns with success an effort, at a slightly advanced cost, it is true, to evade the law and the last will of Erskine D. Kromer.

From all appearances, Hewitt and the Everett Land Company seem to have been innocent purchasers, except that they could not take title save through Kromer's will, and therefore with knowledge of the whole record pertaining to the property.

I advise a reversal and therefore dissent.