83    81,
100   34,

# Richmond.

## DAINGERFIELD AND AL. V. SMITH AND OTHERS.

### MARCH 31st, 1887.

1. CHANCERY PRACTICE—*Creditors' bill—Sale or renting of lands— Account of liens.*—It is improper to decree sale or renting of lands before taking account of liens and priorities. It is also improper to decree renting and sale simultaneously, if the rents prove insufficient. The renting should be first decreed, and if report shows it to be insufficient, sale may be decreed. *Compton* v. *Tabor,* 32 Gratt. 121.

2. IDEM—*Personal representatives—Heirs or devisees.*—Judgment by default against the first in suit wherein the last are not parties affects not the last, and is not evidence against them in suit to subject decedent's real estate. Code 1873, ch. 127, § 3, does not alter this rule. *Brewis* v. *Lawson,* 76 Va. 36.

3. IDEM—*Infants—Guardian ad litem*—Infant defendants are incompetent to consent to decree of sale, and their guardian *ad litem* cannot consent for them.

4. IDEM—*Judgment against administrator—Suit against heirs*—In suit on such judgment, the heirs are entitled to require strict proof outside of the judgment itself of the justice of the claim whereon it was founded.

5. IDEM—*Bill of review—Whole record*—On bill of review, all the errors apparent on face of any part of the record will be corrected. *Pracht* v. *Lange,* 81 Va. 711.

6. PERSONAL REPRESENTATIVES—*Post-mortem claim*—They cannot be sued as such, for services rendered or goods furnished decedent's estate since his death. *Fitzhugh* v. *Fitzhugh,* 11 Gratt. 300.

Appeal from two decrees of circuit court of Essex county, one rendered September 17th, 1881, in the cause of James W. Smith, administrator of W. L. Ellis, deceased, assignee of Burkett G. Rennolds, plaintiff, and W. J. Up-

shaw, in his own right, and as administrator *c. t. a.* of Wm. T. Upshaw, deceased, H. W. Daingerfield, in his own right, and as committee of Louisa B. Upshaw, lunatic, L. B. Daingerfield, E. N. Daingerfield and G. W. Daingerfield, the last three infants under 21 years of age, defendants; and the other rendered March 19th, 1885, on a bill of review filed by her in said cause, to review and reverse the first decree. The first decree was to rent out the decedent's land to pay a judgment obtained by default against Wm. J. Upshaw, administrator *c. t. a.* of Wm. T. Upshaw, to which the heirs and devisees were not parties. The second decree dismissed the bill of review. From these decrees Eleanor N. Daingerfield and Louisa B. Daingerfield appealed to this court. Opinion states the case.

*T. R. B. Wright,* for the appellants.

*H. R. Pollard,* for the appellee.

FAUNTLEROY, J., delivered the opinion of the court.

The transcript of the record in this suit discloses the following case:

Burkett G. Rennolds instituted, in the county court of Essex county, on the seventh of January, 1871, an action of trespass on the case in *assumpsit* against William J. Upshaw, administrator with the will annexed of William T. Upshaw, deceased, defendant, to recover $672.86 for services rendered as a physician, and medicines and attention furnished by plaintiff for defendant, at his request. The declaration, with bill of particulars, was filed February 6, 1871. At the March term, 1872, there having been no appearance for the defendant in person or by attorney, and no pleas put in, and no issues joined, the plaintiff being present and insisting upon the trial, the jury brought in a verdict for the plaintiff for $672.86, with interest on $575.50,

part thereof, from January 1, 1865, and judgment was rendered according to verdict, and for costs, to be levied on the personal estate of the defendant's testator.

The bill of particulars filed with the declaration, the items beginning April 10, 1858, and ending October 15, 1865, shows that no credit was given except the item of cash $27, May 10, 1860, and this was the only item of credit or evidence of payment before the jury when it passed upon the account, and the judgment went by default. In August, 1877, William J. Upshaw, administrator with the will annexed of William T. Upshaw, deceased, obtained from the judge of the circuit court of Essex county, an injunction to enjoin Burkett G. Rennolds, the plaintiff in the said judgment, and James W. Smith, the assignee of the said judgment, from enforcing the same. The bill charged that the said William T. Upshaw died on the twenty-fifth of December, 1852, leaving a will, by which he devised and bequeathed the wnole of his estate, except certain advancements charged in his will, to his widow, L. H. Upshaw, for life, and at her death to William J. Upshaw, L. B. Upshaw, George W. Upshaw and C. T. Upshaw, who intermarried with H. W. Daingerfield, children of the testator; that on sixteenth May, 1853, William J. Upshaw qualified as administrator with the will annexed, and, having settled all the debts, paid off the legacies, turned over the whole of the estate of the testator to the widow and tenant for life, and settled before the proper commissioner of the court his account of administration, which was approved and duly admitted to record, nineteenth February, 1855. The bill further charges that the said widow and tenant for life took all the property so turned over to her for life, the slaves, the personal property, and the farm, and held the same until her death, which occurred twenty-eighth November, 1862, whereupon the said property went into the hands of the children and remain-

dermen under the will; that the said William J. Upshaw resided in Charles City county at the time of his qualification as administrator aforesaid, and at the time of the death of the tenant for life he was in the military service of the Confederacy; that after the war, in the fall of 1865, the said William J. Upshaw visited Essex county, and ascertained that all the debts and claims against his mother, the widow and tenant for life, Mrs. L. H. Upshaw, and against G. W. Upshaw, his brother, who had died, had been settled, so far as could be ascertained, by H. W. Daingerfield, who had married C. T. Upshaw, and who resided on the farm, who so informed him, and exhibited to him receipts, including receipts of Dr. B. G. Rennolds for medicines and medical services for the slaves held by the widow and tenant for life, and also account for articles furnished to the said Rennolds; that, although he had seen Dr. Burkett G. Rennolds on several occasions on his visits to Essex, the said Rennolds never mentioned or asserted any claim against William T. Upshaw, or his estate, or against the estate of Mrs. L. H. Upshaw, deceased, and that he was surprised to receive accounts against William T. Upshaw, deceased, forwarded to him in Charles City county for medicines and medical services charged by Dr. Rennolds for years, commencing in 1858, (over five years after the death of William T. Upshaw, the testator,) and ending in 1865, and that these accounts embraced the charges, and covered years identical with the charges and years embraced in the account which he had rendered to Mrs. L. H. Upshaw, the life tenant, during her life, and for which he had received payment from H. W. Daingerfield, and executed his receipts, which are filed with the bill, to-wit: $100, July 15, 1864; $500, March 11, 1865; and in articles furnished from the estate to the amount of $101.87.

The bill charges that the said William J. Upshaw, ad-

ministrator *c. t. a.* aforesaid, was never served with the summons, or writ or other process, in the said action of *assumpsit* by which the said judgment was obtained; that he left Virginia, and went South, and never heard of the suit or of the proceedings or judgment until his return to Virginia; that the Hon. B. B. Douglass was employed by H. W. Daingerfield at the first calling of the cause to defend the suit, and he is marked as counsel on the papers; that the cause was continued by consent; that at the May term, 1871, the said Rennolds had an agreement with H. W. Daingerfield that he (the said Rennolds) would instruct his counsel to dismiss the suit; that the said Daingerfield, relying on this promise, did not furnish the counsel for defense the evidences of payments and offsets which he held, and that neither Mr. Douglass nor Mr. Daingerfield made any appearance or defense by reason of the said promise; and that the said judgment was obtained at the March term, 1872, in the constrained absence of H. W. Daingerfield, by fraud, deceit, and surprise, under circumstances which precluded any defense at law; and that no defense was made from the bad faith and false assurances and representations of the plaintiff, the said Rennolds; that the said Rennolds, the plaintiff, was the only witness before the jury, and that he was incompetent to testify; that the items of credits,—$100 in 1864, and $500 March 11, 1865,—although entered in the accounts rendered and forwarded by Rennolds to William J. Upshaw, and filed as exhibits with his bill for the first time, yet, in the bill of particulars filed by the plaintiff Rennolds in the lawsuit, with his declaration, and upon which the verdict was obtained and the judgment was rendered, the said items of credit or payment did not appear, and were not before the jury. The common-law suit of *Rennolds* v. *Upshaw* is made an exhibit with the bill for injunction.

The said bill charges that the assignee, J. W. Smith, of

the said judgment, had acquired only the interest of the said Rennolds, subject to all payments and offsets, and tainted with the fraud and deceit aforesaid; and the said bill prayed that the said Rennolds and J. W. Smith, and all others, be enjoined and restrained from enforcing the said judgment.

To this bill the said Burkett G. Rennolds filed his answer, denying any fraud or deceit, any mistake in the accounts, error in the credits, or in any respect, and insisting that the judgment is conclusive, and cannot be set aside in that proceeding. The said J. W. Smith, administrator *c. t. a.* of W. L. Ellis, answered that the judgment was assigned to him by the said Rennolds to meet in part the indebtedness of the said Rennolds to his decedent, and that he knew nothing of the manner of obtaining or the consideration upon which the said judgment was obtained, and that the transaction, so far as he was concerned, was *bona fide*, and for value.

On May 2, 1879, the cause came on to be heard, upon the bill, exhibits and answers of the defendants, with depositions, when the bill was dismissed, with costs against the plaintiff, William J. Upshaw, administrator with the will annexed of William T. Upshaw, deceased.

On the eighteenth day of May, 1881, James W. Smith, administrator of W. L. Ellis, deceased, assignee of Burkett G. Rennolds, filed his bill in chancery in the circuit court of Essex county, alleging that he is the assignee for value of the said judgment recovered by the said Burkett G. Rennolds on the twenty-first of March, 1872, against William J. Upshaw, administrator *c. t. a.* of William T. Upshaw, deceased, for $672.86, with interest on $575.50, part thereof, from January 1, 1865, and $15.37 costs, on account of the liability of the estate of the said William T. Upshaw; and exhibiting, with his bill, as a part thereof, the record in the injunction suit aforesaid of *Upshaw, Adm'r, etc.* v. *Rennolds*

*and J. W. Smith, his Assignee;* and praying, in default of personal assets, to subject the real estate called "Rose Hill," in the possession of the heirs of William T. Upshaw, deceased, to the payment and satisfaction of the said judgment, either by renting or by selling the same; and praying that William J. Upshaw, in his own right, and as administrator *c. t. a.* of William T. Upshaw, deceased; H. W. Daingerfield, in his own right, and as committee of Louisa B. Upshaw; Louisa B. Upshaw, *non compos,* E. N. Daingerfield, L. B. Daingerfield, and George W. Daingerfield,—the last three being infants under twenty-one years of age,—be made parties defendant to the bill, and answer the same. H. W. Daingerfield was appointed guardian *ad litem* for the infant defendants, and as such filed the answers of the infant defendants, Louisa B., Eleanor N. and George W. Daingerfield.    There was no answer filed by or for Louisa B. Upshaw, *non compos,* by her committee, nor by a guardian *ad litem,* and none was assigned by the court to defend her.

The cause came on to be heard on the seventeenth September, 1881, on the bill taken for confessed, and on the said answers and replications thereto; and the court, by consent of parties, adopting Statement A, made up at the bar by the counsel, as a true exhibit of the indebtedness of the estate of William T. Upshaw, deceased, to the plaintiff in the cause, (which said Statement A, if ever filed, is lost from the papers in the cause,) so as to dispense with a reference to a master commissioner respecting the said indebtedness, which said indebtedness amounted to $1,178.96, with interest on $575.50, part thereof, from sixteenth of September, 1881, decreed that J. H. C. Jones, special commissioner, rent out publicly the lands of which the said William T. Upshaw died seized, (the farm "Rose Hill,") and continue to rent, from year to year, so long as the same shall continue to rent for one-fifth of $1,178.96, with in-

terest on $575.50, part thereof, from the sixteenth of September, 1881; but, if the said land should fail to bring at first offering such a sum, then the said commissioner to sell the same, and report to the court.

On the fourth of March, 1882, Commissioner Jones filed his report of renting for 1882, which was confirmed by the court, and he was authorized to collect and apply the rent. On the fourth of September, 1882, he filed a report of renting for 1883, which was confirmed by the court. On the fifteenth of March, 1883, he filed a report showing amount collected and disbursed in payment of costs and commissions, and to the plaintiff Smith upon his debt, and to one Bennett Tuck, *a prior lienholder,* whose lien, with any other liens or outstanding debts, if any such existed, was never directed to be taken and reported by any order or decree in the cause.

On the third of August, 1883, Louisa B. Daingerfield, one of the appellants, exhibited her bill of review to the judge of the circuit court of Essex county, alleging that she had attained to the age of twenty-one years on the fourth of July, 1883; and having stated and assigned the errors and imperfections that appeared in the decree of September 17, 1881, and in the proceedings in the suit of *Smith* v. *Upshaw,* she prayed that the said decree be reviewed, reversed, and set aside; that the further renting of the land (Rose Hill farm) be stopped, and the rents already collected for the same be refunded to those entitled to the land; and that J. W. Smith, administrator of W. L. Ellis, deceased, assignee of Burkett G. Rennolds; H. W. Daingerfield, in his own right, and as committee of Louisa B. Upshaw; E. N. Daingerfield and George W. Daingerfield, infants, the former over and the latter under fourteen years of age; B. H. Robinson, sheriff of Essex county, and committee administrator *d. b. n. c. t. a.* of William T. Upshaw, deceased; Jennie W. Upshaw, widow; Thomas Wilcox, administrator

of William J. Upshaw, deceased; and Jennie Vest, Annie
Upshaw, Louisa Upshaw, Mary Upshaw, Fannie C. Upshaw
and Marion Upshaw, children and distributees of William
J. Upshaw, deceased, the last three being infants under the
age of twenty-one years; and J. H. C. Jones, commissioner,
—be made parties defendant to the bill.

The said judge of the circuit court of Essex county
awarded the injunction on the said bill of review on third
day of August, 1883.   On the nineteenth of March, 1885,
the cause came on to be heard on the bill taken for con-
fessed, as to all the adult defendants except the defendant
J. W. Smith, administrator of W. L. Ellis, deceased, the
answer of the said Smith, and the answers of the infant
defendants filed by their guardian *ad litem*.   The court
dissolved the injunction, and decreed that the bill of re-
view be dismissed, with costs to the defendants, for want
of equity on its face.

We are of opinion that the circuit court erred in its de-
cree of September 17, 1881, in decreeing the renting and
selling of the land (the Rose Hill farm) before taking an
account of the liens thereon, and settling the priorities of
the creditors.   *Kendrick* v. *Whitney*, 28 Gratt. 655.   It is
true that the bill is not to enforce a *judgment lien*, but a
*judgment;* yet the record shows that J. H. C. Jones, who,
as counsel, prepared the bill and the "consent" decree, as
commissioner to rent and sell, reports that he had paid
Bennett Tuck, the holder of a *prior lien*, and so paid him
without a report of liens, or a decree for such, and without
authority of the court, thereby undertaking to settle pri-
orities, and to pay without any account or order of court
for so doing.

If there was a "holder of a prior lien," there must be
liens.   The decree recites: "By consent of parties, adopt-
ing Statement A, made up at the bar by the counsel as a
true exhibit of the indebtedness of the estate of William

T. Upshaw, deceased, to the plaintiff in this cause, so as to dispense with any reference to a commissioner respecting the same." This only determined the amount of indebtedness of the estate to that plaintiff, and dispensed with a reference to a master for an account as to it. The decree shows no consent dispensing with an *account of debts;* and even if consent was or could have been given as to Statement A being a true exhibit of indebtedness to this plaintiff, it does not appear that consent was given for a decree for renting or selling the land of the infant heirs with or without an account of debts. The court erred in decreeing simultaneously for renting and selling the land, dependent upon a contingency, and to be determined by the sequel. It was decided in *Compton* v. *Tabor*, 32 Gratt. 121, that the court should decree, *first*, for renting; and, if the rents should prove insufficient, to report to court for further proceeding to be had before sale. Upon a bill by simple contract creditors to marshal assets, and to subject real estate in the hands of heirs, some of whom are infants, it is premature to decree a sale for the payment of debts before ascertaining the amount and character of the indebtedness chargeable upon the lands of the decedent. *Cralle* v. *Meem*, 8 Gratt. 496; *Simmons* v. *Lyles*, 27 Gratt. 928.

There is no evidence of any kind or degree to establish the demand of the plaintiff J. W. Smith, assignee of the judgment, against the heirs, outside of the judgment itself, against the personal representative, and this judgment is no evidence against the heirs, (*Brewis* v. *Lawson*, 76 Va. 40;) but it is contended that, although the appellants are not bound by the judgment, yet they are bound by the *"consent"* decree of September 17, 1881, and cannot go behind it.

For want of discretion, the infant defendants were not competent to consent, and no one could consent for them.

They could select no attorney, and a guardian *ad litem* to defend the infants could not consent away their rights and their inheritance. *Ewing* v. *Ferguson,* 33 Gratt. 563. "No such consent could be given on the part of the infant heirs, and their rights and interests were under the protection of the court." *Cralle* v. *Meem,* 8 Gratt. 530. "It cannot be used against them, as having been made by their guardian *ad litem;* for no rule is better settled than that an answer of an infant by guardian cannot be read against him at all, for any purpose." *Bank of Alexandria* v. *Patton,* 1 Rob. 535. "An infant is never to be prejudiced by an act, default, or admission of his guardian *ad litem.*" Minor Inst. Vol. I. 520, 521. "Whatever admissions there may be, or whatever points may be tendered thereby in issue, the plaintiff is not in any degree exonerated from his duty in proving, as against the infant, the whole case upon which he relies." 1 Daniel Ch. Pr. 169, and notes.

The decree of September 17, 1881, was not for the infant defendants, but was solely to their prejudice. Code 1873, § 3. In this case there was an insane person, with reason dethroned, and there are infants just verging into womanhood, who were and are dependent upon the Rose Hill farm for shelter, for food and raiment, and for education; and to sequester the rents was even more disastrous and distressing than even a sale of a part of the land. The record shows that all the items of the account, upon which said judgment was rendered, were charges and alleged services rendered years after the death of William T. Upshaw. *Fitzhugh* v. *Fitzhugh,* 11 Gratt. 302. These appellants were not parties to that common law suit, and could not appeal from the judgment; but the record of that common law suit is made a part of the plaintiff's bill, by which he seeks to fasten that judgment upon the land of these infant heirs, and they have the right to show the injustice

of the accounts rendered, and to call for full and strict proof. In the absence of all proof as to these accounts, and no proof with the bill except the judgment against the personal representative, it was error to decree without requiring the plaintiff, independent of any consent decree, and the admissions of any guardian *ad litem* or infant, to prove his demand. But it is insisted that the services of Dr. Rennolds were valuable to the estate of William T. Upshaw, and that a court of equity will pay them, not as debts of the decedent, but as lawful demands against his estate, to be paid out of the real assets. But the record shows that on sixteenth of May, 1853, William J. Upshaw qualified as administrator with the will annexed of William T. Upshaw, deceased, executed the will by paying all the debts and legacies of the testator and turning over the rest of the estate to the widow and tenant for life; and on the first of November, 1854, settled his full and final administration accounts, which were approved and confirmed by the court, and duly recorded. After the death of the widow and life tenant, which occurred in 1862, the slaves vested in the remainder-men. And Dr. Rennolds, or his assignee, cannot reach the assets for claims originating since the death of the decedent by suit against the personal representative as such, (*Fitzhugh* v. *Fitzhugh,* 11 Gratt. 302;) and surely medical services to slaves, and to the white members of the family adults, the first items of which commenced six years after William T. Upshaw's death, and but little less time after the said administrator had turned over the slaves to the widow and life-tenant, and four years after he had fully and finally settled his administration accounts, could not be allowed as lawful demands against William T. Upshaw's estate. Not a single item of medical service in the account stated by Dr. Rennolds, and sued on by him, as the basis of his judgment against William T. Upshaw's estate, was rendered

to the slaves while they were kept together by the administrator, or at his request, or before they were turned over to the widow and life-tenant under the will; and Dr. Rennolds, as the record shows, rendered these identical accounts for these identical services, for the years 1859, 1860, 1861, to Mrs. Upshaw, the life-tenant and owner of the slaves; and the record shows that he was fully paid, and overpaid, and that there is nothing due to Dr. Rennolds from even the owners of the slaves.

The court erred in dismissing the bill of review of Louisa B. Daingerfield. It was the duty of the court to correct the errors apparent upon the decrees in the cause, and to look into all the pleadings and other proceedings, and correct the errors of law in the whole record under review. *Pracht* v. *Lange*, 80 Va. 711; *Wroten's Assignee* v. *Armat*, 31 Gratt. 260; *Parker* v. *Dillard*, 75 Va. 418.

The decrees appealed from are wholly erroneous, and must be reversed and annulled; and the cause will be remanded to the circuit court of Essex county, with directions to enter a decree in that court dismissing the bill of the plaintiff, J. W. Smith, administrator of W. L. Ellis, deceased, against W. J. Upshaw, administrator *c. t. a.* of William T. Upshaw, deceased, with costs to the appellants, and restoring to the parties entitled all the rents collected from the renting of the land ("Rose Hill" farm), and all costs decreed against them and paid by them, or expended by them, in the said suits of *Smith, etc.* v. *Upshaw*, and the bill of review of *Daingerfield* v. *Smith*, in the said circuit court of Essex county, aforesaid; and the said appellants will recover their costs in prosecuting their appeal to this court.

DECREES REVERSED.