In re Guardianship of B. F. KIMBLE, insane, WILLIAM KIMBLE, Administrator of the Estate of B. F. KIMBLE, Deceased, and EMMA HOBSON, Guardian of HATTIE HARRIS, Minor, v. J. I. DAILEY, Guardian of Estate of B. F. KIMBLE, Insane, Appellant.

Guardians: UNOFFICIAL ADVICE OF JUDGE. The advice of a district
1   judge given a guardian out of court and never entered as a

written order, is not official, and will not justify the guardian's action in respect thereto.

**Intermediate accounts:** EFFECT OF APPROVAL. The *ex parte* intermediate reports and accounts of guardians, when approved, are only *prima facie* evidence of the accuracy of matters stated therein, and an approval during the life of the ward is not binding upon his wife and children though served with notice fixing the time of hearing the application for approval.

**Mismanagement:** ADJUDICATION. Where a guardian *ad litem* and the wife and children of a lunatic appear to an application to sell land to pay debts, and answer that the guardian is indebted to the estate because of mismanagement, an order directing a sale, allowing the guardian compensation and reimbursement for expenses, is an adjudication of the issue of mismanagement which is final unless appealed from.

**Authority of guardian ad litem.** In defense of a guardian's application to sell the land of his ward, the guardian *ad litem* may affirmatively interpose the claim that the guardian has mismanaged the estate and should account to it for sums lost through his negligence.

**Allowance of attorney fees.** A guardian should be allowed reasonable attorney fees actually paid out in defending a claim against him as guardian.

*Appeal from Polk District Court.*— Hon. Josiah Given, Judge.

Wednesday, June 14, 1905.

B. F. Kimble was adjudged insane, and in 1892 J. I. Dailey became his guardian. He continued such until the ward's death, in February, 1902. William Kimble was then appointed administrator of the estate of the deceased. Dailey filed his final report as guardian April 24, 1902, to five paragraphs of which the administrator filed exceptions. To these the guardian responded in what he was pleased to designate an answer, but which was in fact an amendment to the report, making it more explicit with respect to the items to which exception was taken. Upon hearing, four of the exceptions were overruled, and one sustained. Both

parties appeal, the appeal of the guardian being first perfected.— *Reversed.*

*Berryhill & Henry* and *Spurrier, Forbes & Mills*, for administrator, William Kimble.

*W. A. Connolly*, for Emma Hobson.

*Dale & Harvison*, for Guardian.

LADD, J.— Prior to the appointment of J. I. Dailey, in 1892, as guardian of B. F. Kimble, who had been adjudged insane, Martin Davis had acted in that capacity, and had procured an order of court directing him to sell 160 acres of land to the Oak & Highland Park Improvement Company for the consideration of $60,000, of which $5,000 was to be paid in cash, $5,000 in one year, $10,000 in two years, and $40,000 in five years, with interest at seven per cent. per annum on deferred payments. Before the order was executed, Davis was suceeded by Dailey as guardian, and he was directed by the court to carry out the contract of his predecessor. This was done, and the Oak & Highland Park Improvement Company, upon receiving a deed, conveyed to the Auburn Heights Land Company. The land was platted into blocks and lots, and the lots divided into thirteen groups, on each of which was executed a mortgage to a trustee, securing ten bonds of the face value of $1,000 each. These 130 bonds were delivered to the guardian as security for the purchase price. When the cash payment was made he surrendered to the Oak & Highland Park Improvement Company one block of ten bonds, and one of like number when the second $5,000 was paid. Subsequently the officers of the company requested him to deliver to them three blocks of ten bonds each, to be sold and the proceeds applied in improving the property. The guardian did so, but, as the testimony tended to show, upon the advice of a district judge when at his home sick. It will be noted that in turning

over these thirty bonds the guardian parted with security on three of the thirteen groups of lots, and so did on the mere promise of the officers to improve the remaining property against which the guardian retained a lien.

One of the exceptions to the final report of the guardian raises the question as to whether the guardian should be charged with the value of these bonds. The advice of the judge, given orally outside of court, furnished no justification for what he did. What the judge said was entitled to no more consideration than a similar view expressed by any other equally reputable lawyer would have been. Judges are authorized by statute to make certain orders in vacation, and these are expressly defined to be directions made in writing (section 3842, Code), and when so made are to be filed forthwith with the clerk (section 3846, Code). *Bristol Savings Bank v. Judd,* 116 Iowa, 26. The power of a judge in vacation to make orders or exercise judicial functions is that only which is conferred by statute. *Prosser v. Prosser,* 64 Iowa, 378; *Laughlin v. Peckham,* 66 Iowa, 121; *Blair v. Reading,* 99 Ill. 600; 17 Am. & Eng. Enc. of Law (2d ed.) 724. And nowhere in the Code is he authorized to advise officers of courts or others, or to make oral directions, in any matter. On the contrary, he is prohibited from practicing as an attorney or counselor at law, and from giving " advice in relation to any action pending or about to be brought in any of the courts of this State." Section 281, Code. The functions of his office are not advisory, but to direct and command, and what he may say outside of court, unless reduced to writing so as to constitute an order, is not official, and can be regarded as of no more consequence than it would if spoken by him when not a judge. *State Central Sav. Bank v. Fanning Ball-Bearing Chain Co.,* 118 Iowa, 698, 709; *Whitlock v. Wade,* 117 Iowa, 153; *Young v. Rothrock,* 121 Iowa, 588; *In re Thomas' Estate,* 26 Colo. Sup. 110 (56 Pac. 907). In the last case the court said: " It is not the duty of an incum-

*1. UNOFFICIAL ADVICE OF JUDGE.*

bent of a judicial position to advise parties to any action
regarding their rights or duties, ·or to make any orders in
relation to them, except when the matter calling for an
order is presented to him in his official capacity; and mere
advice or suggestion upon his part regarding matters which
are not before him for consideration, and in which he does
not assume to act judicially, are no protection to those who
chose to rely upon them." In *Marlow v. Marlow,* 48 Iowa,
640, and *Latham ·v. Myers,* 57 Iowa, 519, the orders were
made by the court and overlooked in making up the record,
and oral evidence of what the orders were seems to have
been received without objection, rather than a record thereof
entered *nunc pro tunc.* In *Harlin v. Stevenson,* 30 Iowa,
374, the payments, though made on the oral advice of the
judge, were subsequently approved in a settlement with the
county court, which was in no manner assailed. No order
was entered by the judge in this case, and what he may have
said in conversation with the guardian furnished no justifica-
tion for the conduct of the latter in surrendering the bonds.

II. Certain intermediate reports were filed by the
guardian and approved by the judge or clerk of court, and
something is claimed for these orders of approval. By sec-
tion 3203 of the Code, "All guardians are
required to render an account to the district
court at least once a year of all moneys or
other property in their possession, with all interest which
may have accrued on the money loaned belonging to the
wards." But the Code is silent as to any orders with refer-
ence thereto, save that the clerk is given the same authority
to examine and approve "intermediate or interlocutory ac-
counts or reports . . . of guardians" as are possessed
by the court or judge. The accounting contemplated by the
statute quoted is not exacted for the purpose of adjudicating
their correctness, but to indicate to the court and those inter-
ested the condition of the estate, its liabilities and resources,
the propriety of orders for which application may be made,

2. INTERMEDIATE
ACCOUNTS: ef-
fect of ap-
proval.

and, generally, the care given and required in order to best conserve the interests of the ward.    See Woerner's American Law of Guardianship, 319 *et seq.*    Such reports are *ex parte,* without any one but the court to inquire into their correctness, and should not be given, when approved, any greater effect than *prima facie* evidence of accuracy of the account as stated therein.    *Warfield v. Warfield,* 74 Iowa, 185; *Latham v. Myers,* 57 Iowa, 519; *State v. Jones,* 89 Mo. 470. That the same rule obtains with respect to the progressive reports of an administrator or executor appears from *Dorris v. Miller,* 105 Iowa, 571.

But it appears that in the report filed April 24, 1896, all the facts concerning the surrender of the thirty bonds were detailed, and that service of a notice fixing the time for hearing the request of the guardian for its approval was acknowledged by Mary E. Kimble, wife of the insane ward, and his children and the children of a deceased child. On the day named an order was entered approving the report. It is apparent that the parties notified had no present interest in the property of Kimble.    It still belonged to him.    They were not necessary parties to any litigation affecting his interests.    It may be that courts will permit those related to the insane ward to interpose in his behalf in order to guard his interests, but never with the object of protecting a mere expectancy on their part.    In law, Kimble was still alive, and, as appellant insisted in another portion of his argument, capable of suing and being sued, though acting through his guardian.    Had he been notified and a guardian *ad litem* been appointed to investigate and defend in his behalf, another question would have arisen.    This was not done, and, as the wife and children were not necessary or proper parties, notice to them added nothing to the force which should be accorded the order of approval.    Nor is there anything in the claim that the administrator or heirs have acquiesced in what the guardian did.    They are complaining as soon as entitled to be heard.    As Kimble was

*non compos mentis,* he cannot be held to have known of or been capable of acquiescing in anything that was done.

III.   The guardian applied on September 5, 1900, to the court for an order to sell certain real estate in order to meet some indebtedness, and due notice was served on the ward and two guardians *ad litem* appointed to act in his behalf.   His wife, children, and some of his grandchildren were also notified,

3. MISMANAGE-
MENT: adjudi-
cation.

and some of them filed answers, as did also the guardians *ad litem,* to the effect that the guardian, Dailey, had so negligently cared for the estate that he had dissipated property to the value of $25,000; that he had improvidently loaned $5,000 to W. W. Fink and Reuben Allen without security, and without first obtaining an order of the court so to do, and should restore the same to the estate; that, without authority so to do, he had invested $4,275 in the stock of the Polk County Homestead Company, and that this should be charged to him; and that he had given away $15,000 worth of the property of the estate, which he should be held to account for; and they asked, in behalf of the ward, an accounting since the appointment of the guardian, and that the court find how much was due, and that he be required to account for the same and pay it to a new guardian.   The guardian replied, averring that the wife and children had entered into a contract by which he was exonerated from blame, (2) that they were estopped by said contract from claiming an accounting, (3) that he acted prudently in making the loan of $5,000, (4) that he so acted in purchasing the stock, and (5) that what he had done had been reported to the court and approved.

While the ultimate question for the court to determine was the propriety of selling the ward's land, yet within the pleadings, and essential to the decision of the above question, were three distinct and controlling issues:   (1) Ought the guardian to account for the value of the bonds surrendered, (2) for the money loaned to Fink and Allen without security,

and (3) for the money expended in the unauthorized purchase of stock in the Polk County Homestead Company? The opinion delivered by the judge shows conclusively that, in ordering a sale of land, he did determine all of these issues adversely to the ward. Had any of them been found in his favor, the order would have been unnecessary. Indeed, the nature of the claims was such as to obviate any other conclusion. Here they are, as allowed: For guardian's services, $200; for attorney's fees in that proceeding, $50; for attorney's fee in past, $95.75; for preparing report pending proceedings, $20; for services of guardian *ad litem*, $20; ordered to be paid for support of ward, $224. Surely anything owing to guardian for services and attorney's fees might properly have been applied on an indebtedness due the ward because of the mismanagement of the guardian. And, unless it appeared the amount for which the guardian should have accounted was not available, an order of sale could not have been appropriately entered. As the order was entered, and these issues were raised, fully heard, and determined, there is no escape from the conclusion that they were adjudicated against the insane ward. It must not be inferred that we in any way approve of the finding of that court or the reasons given therefor; we merely say that the order and judgment entered was an adjudication of the issues raised.

IV. It remains to be determined whether the guardians *ad litem* were authorized to interpose an affirmative defense and to demand an accounting. Such an officer is not a party to the suit. His authority is limited

4. AUTHORITY OF GUARDIAN AD LITEM.

to the representation of his ward in the particular proceeding which has rendered his appointment necessary, and terminates with final judgment. But his duties are not purely formal. The filing of a general denial when a specific one is required will not be enough. His answer should embody a full defense, and the court will, *sua sponte*, insist that the proper defense be interposed.

Woemer on Guardianship, 70.   He cannot admit or waive
anything to the prejudice of his ward, but may agree upon
formal matters merely incident to the course of litigation.
Woemer on Guardianship, 467; *Edsall v. Vandemark,* 39
Barb. (N. Y.) 589, 599; *Daingerfield v. Smith,* 83 Va. 81
(1 S. E. Rep. 599); *Waterman v. Lawrence,* 19 Cal. 210
(79 Am. Dec. 212).   It is the duty of the guardian *ad litem*
to make as vigorous a defense as the nature of the case will
admit, and, in submitting the cause to the court for its
decision, to raise every question involving the rights of the
incompetent affected by the suit.   *Rhoads v. Rhoads,* 43 Ill.
239; *Dow v. Jewell,* 21 N. H. 486; *Knickerbacker v. De-
freest,* 2 Paige, 304; *Pinchback v. Graves,* 42 Ark. 227. As to
powers of guardian *ad litem,* see valuable note to *Fletcher v.
Parker,* 53 W. Va. 422 (44 S. E. Rep. 422, 97 Am. St. Rep.
991).   Or, as put in *Stunz v. Stunz,* 131 Ill. 210, 221 (23 N.
E. Rep. 407, 409):

> It is the duty of the guardian *ad litem,* when appointed,
> to examine into the case and determine what the rights of
> his ward are, and what defense their interest demands, and
> to make such defense as the exercise of care and prudence
> will dictate.   He is not required to make a defense not war-
> ranted by law, but should exercise that care and judgment
> that reasonable and prudent men exercise, and submit to the
> court, for its determination, all questions that may arise, and
> take its advice and act under its direction in the steps neces-
> sary to preserve and secure the rights of the minor de-
> fendants.

In short, his duties are to manage the ward's defense
and take care of his interests in the particular litigation in
which he is appointed to act.   But in doing so, he is not
limited to obstructive tactics alone; he is entitled to resort
to all usual methods for the protection of the interests of
the incompetent as may be dictated by the exercise of reason-
able care and prudence, and if, to meet the contentions of his
adversary, it is necessary to set up an affirmative defense, or
even to plead by way of counter-claim or cross-bill, he may do

so.  In *Kelsey v. Kelsey,* 57 Iowa, 383, an executor instituted
an action for the interpretation of a will.  A guardian *ad
litem* was appointed, and, after answering, filed a cross-bill,
in which he pra'yed that the order admitting the will to
probate be set aside and that it be annulled because of having
been procured by undue influence, and of testator having
been of unsound mind when the will was executed.  It was
urged that the powers of ·a guardian were limited to the
defense of an action instituted by another, and that he could
not assail the validity of the will, but the court responded :
" A guardian *ad litem* is not restricted by the statute to
pleading certain defenses and forbidden to make others.  He
is authorized to defend the action, and may set up any
matter that will defeat it.  While the invalidity of the will
is set up in this action by a cross-petition, it is nevertheless
pleaded as a defense.  We reach the conclusion that it was
lawfully interposed by the guardian *ad litem.*"

  *Sprague v. Beamer,* 45 Ill. App. 17, was an action to
foreclose a mortgage, and three of the defendants were
minors.  A guardian *ad litem* was appointed for them, and
he filed a cross-bill, in which he asked that the mortgagee
be required to account for rents and profits received by
him while in possession.  It was dismissed, and the guardian
*ad litem* appealed for the infants, and as to the propriety
of filing the cross-bill the appellate court, speaking through
Cartwright, J., now of the Supreme Court of that State,
said :  " It is claimed that his powers are limited to defense,
objection, and opposition merely, and that he can take no
affirmative step.  Such a construction would preclude him
from filing a cross-bill or doing any act, although it might
be essential to the protection of the infant's interest involved·
in the litigation which he is appointed to defend.  We think
that his powers are not so limited."  This was quoted with
approval in *Tyson v. Tyson,* 94 Wis. 225, the court saying
that in the performance of the guardian's duties " he may
interpose a defense, affirmative or otherwise, set up a counter-

claim, or may appeal from an adverse judgment." Upon the application of the guardian *ad litem* for compensation in the same case, *Tyson v. Richardson,* 103 Wis. 397 (79 N. W. Rep. 439), the court reiterated its conception of the duty of such officer in the following language:

It was the further duty of the person appointed, being an officer of the court, to accept the trust reposed in him, and to seasonably investigate the questions of law and fact involved in the litigation, and to the best of his ability discover the rights of the defendants, to take nothing for granted in plaintiff's favor that by any reasonable probability could be the subject of contest, to make no admissions regarding such matters adverse to the defendants, but to put the plaintiff to proof of the facts as to every such matter upon which relief in their behalf was demanded, to make a vigorous defense against plaintiff's claim where defense was reasonable in any view of the case, to bring all the facts and the law in defendant's behalf, so far as practicable, to the attention of the court, not stopping even with an adverse decision if reasonable doubt as to its justice existed; and it was the duty of the trial court to see that the duty of the guardian *ad litem,* as indicated, was faithfully performed.

In the light of these decisions, the authority of the guardian *ad litem* to plead whatever might defeat the action of the guardian cannot be questioned. Possibly orders other than that of sale might have been found essential for the protection of the estate, had any of the issues raised been decided in favor of the ward; but this was incidental to the defense, and did not operate as a limitation on the powers which might be exercised by the guardians *ad litem.* Indeed, they might well have gone farther, and, in the name of their ward, brought the cause to this court for review. That such a course was open to him, see *Tyson v. Tyson, supra; Loftis v. Loftis,* 94 Tenn. 232 (28 S. W. Rep. 1091); *Jones v. Roberts,* 96 Wis. 427 (70 N. W. Rep. 685, 71 N. W. Rep. 883); *Thomas v. Safe Deposit, etc., Co.,* 73 Md. 451 (21 Atl. Rep. 367, 23 Atl. Rep. 3); *Harlan v. Watson,* 39 Ind. 393. But no appeal was taken. The adjudication of the district

court that the incapable was not entitled to recover of his guardian on the items in issue was final. The administrator and heirs take under him, and are therefore bound by the litigation.

What has been said disposes of three of the exceptions to the final report. Another relates to the guardian's failure to pay the taxes promptly, but the evidence fails to show negligence in this respect. While some penalties were allowed to accrue, they were such as in the peculiar condition of the estate seemed unavoidable in the proper management of its affairs. The last exception was to the allowance of attorney's fees actually paid out in defending in a claim made against him as guardian. He had taken certain stock in companies as collateral security, and an action was instituted by one of the creditors of these companies to enforce the payment of an unpaid balance due on the stock subscription. Shortly before the suit was begun the guardian, with the court's approval, had taken the stock individually. It is apparent from this that unless he was negligent in receiving the stock as security, or in allowing it to stand on the books of the company in his name as guardian after he had taken it individually, he ought not to be charged with the costs of the defense. The failure to transfer had no bearing on the liability of the estate. *White v. Green,* 105 Iowa, 176. And the evidence does not warrant the conclusion that the guardian was negligent in receiving the stock originally. These fees have already been established as a claim against the administrator of the estate of the deceased lunatic, without prejudice to a claim therefor by the latter against the guardian, and all necessary to be added is that it ought not be allowed.

Our conclusion is that all exceptions to the guardian's report should have been overruled.— *Reversed.*

<div style="margin-left:2em"><small>5. ALLOWANCE OF ATTORNEY'S FEES.</small></div>