# CASES DECIDED

IN THE

# Supreme Court of Appeals

## OF VIRGINIA

### Richmond.

### J. M. BARNHARDT v. JESSIE K. SMITH.

March 22, 1928.

Absent, Burks, J.

1. BILL OF REVIEW—*When Bill Lies—Errors Apparent upon the Face of the Record—Newly Discovered Evidence.*—A bill of review can be filed only on the ground that error of law is apparent upon the face of the record, or that new evidence has been discovered since the trial.

2. BILL OF REVIEW—*When Bill Lies—What are Errors Apparent upon the Face of the Record.*—The phrase "errors of law apparent upon the face of the record" embraces all that appears upon the face of the proceedings, including whatever was embodied in the issue. It really means error of law, disclosed by the record, as contradistinguished from a mistaken conception of fact, as shown by the evidence in the cause. To determine on bill of review whether or not error of law exists, the court will examine the original bill, the answer filed in the cause, all orders and decrees made and entered therein, the commissioner's report, so far as errors on the face thereof are concerned, and all the other proceedings, to ascertain whether upon the whole case error of law has been committed.

3. BILL OF REVIEW—*Errors in Determination of Facts.*—If the errors complained of be errors of judgment in the determination of facts, these can only be corrected by appeal.

4. BILL OF REVIEW—*Errors in Determination of Facts—Right of Way—Case at Bar.*—In the instant case, a proceeding to enjoin defendant from entering upon the premises of complainant and from passing over a road on complainant's land, the trial court found for the complainant. Defendant filed a petition for a bill of review on the ground of error apparent on the face of the record, in that the judge of the trial court held that defendant was not entitled to a right of way

1

over the lands of complainant by appurtenance to his land, when it appeared from a plat of the original tract to which his lands and complainant's belonged, showing its partition among the parties entitled to share therein, that the way in question was appurtenant to the several lots of lands into which the original tract was subdivided   This original plat was not recorded along with the partition deed, and although introduced in evidence, the facts it tended to establish were not admitted by the pleadings, nor stated as facts in the decree.

*Held:* That if the court erred in holding that defendant was not entitled to a right of way by appurtenance over defendant's land, it was not an error apparent upon the face of the record, but an error of judgment in the determination of the facts, which cannot be taken advantage of by bill of review.

5.  BILL OF REVIEW—*After-Discovered Evidence—Essentials of After-Discovered Evidence to Warrant Bill of Review.*—In order to entitle a litigant to a bill of review on the ground of after-discovered evidence, the evidence must be discovered after the trial and be such as could not have been discovered before, by the exercise of reasonable diligence; must be material and not merely cumulative and such, if true, as ought on another hearing to produce a different result on the merits.

6.  BILL OF REVIEW—*Statements in Petition taken as True.*—Upon a petition for leave to file a bill of review, the statements contained in the bill must be taken to be true.

7.  STREETS AND HIGHWAYS—*Discontinuance of Highway—Presumption.*— A highway once legally established cannot lose its character, if the public only object, except by its extinguishment or vacation in due course of law.   And it is true that this right ceases only by force of law.

8.  BILL OF REVIEW—*After-Discovered Evidence—Existence of Public Highway—Old Records Discovered in a Place other than the Clerk's Office— Case at Bar.*—The instant case was a suit to enjoin defendnt from using a way over complainant's land.   The trial court foundain favor of complainant, and defendant petitioned for leave to file a bill of review on the ground of after-discovered evidence.   Defendant alleged that he had diligently searched the county records prior to the hearing of the case but did not know of certain records which were kept, not in the clerk's office, but were piled in a disorderly mass in a room over the courthouse, separate and apart from the clerk's office, and that after the entry of the decree in the case defendant learned of these records, and upon searching them found orders of court which established beyond all question the fact that the roadway in controversy was established as a public road, and that efforts to change this road had proved unavailing.

*Held:* That this newly-discovered evidence was not cumulative; that it could not have been discovered before the entry of the final decree; that the evidence was material, and that it would probably produce a different result on another hearing. Therefore, the bill of review should have been granted.

9. RECORDING ACTS—*Decree in Partition Suit—Code of 1819, Chapter 99, Section 14.*—Code of 1819, chapter 99, section 14, provides that every partition of any tract of land shall be duly recorded in the court of the county or corporation in which the tract lies, and until so recorded, such partition shall not be received in evidence in support of any right claimed by virtue thereof.

*Held:* That an order of court directing that a partition deed be recorded and the recordation of the deed, since the partition was made by deed, which conveyed the several parcels of land by metes and bounds, was a sufficient compliance with the statute.

Appeal from a decree of the Circuit Court of Middlesex county. Decree for complainant. Defendant appeals.

*Reversed and remanded.*

The opinion states the case.

*Lewis & Sutton* and *Lewis Jones*, for the appellant.

*W. D. Evans* and *Leon M. Bazile*, for the appellee.

WEST, J., delivered the opinion of the court.

On January 10, 1925, Jessie K. Smith filed her bill in the Circuit Court of Middlesex county against James M. Barnhardt, alleging that she is the owner in fee simple of a tract of land in Middlesex county, containing 690 acres, known as the "Rosegill" farm, which was conveyed to her by general warranty deed, from John A. Royall and wife, dated September 1, 1924, and duly recorded in the clerk's office of said county; that James M. Barnhardt owns a farm which adjoins "Rose-

gill" on the east side thereof, and was given permission by Jessie K. Smith to pass through her farm, for a limited time, over a certain road which was formerly used to reach a mill on the farm; that while using said road Branhardt and his servants left the gate open at the entrance to the farm and permitted his hogs and cattle to trespass upon her premises; that she put a lock on the gate and gave Barnhardt a key and told him he might continue to use the road, called the mill road, if he would keep the gate locked, which he failed to do; that later she put two locks on the gate which he broke, and continued, in utter disregard of her protest, to use the road, leave the gates open and trespass upon her land; that the trespass was repeated and continuous, and caused her irreparable injury.

The prayer of the bill is that Jas. M. Barnhardt, his agents and employees, be enjoined and restrained from entering upon the premises of the complainant, and especially from passing over said road, or interfering in any way with the gates of the complainant.

Upon the presentation of the bill, on June 10, 1925, an injunction was awarded by the judge of the Circuit Court of Middlesex county, in accordance with the prayer thereof, enjoining and restraining Jas. M. Barnhardt, his agents and employees, for a period of thirty days, from going upon the premises of Jessie K. Smith, described in the bill, and "from passing over her said lands or road, or interfering with her gates located on said premises, and especially the said mill road mentioned in said bill." The injunction was enlarged and extended until the entry of the final decree.

On June 18, 1925, Jas. M. Barnhardt filed his answer to complainant's bill, in which, among others, he makes these allegations: He admits the allegations contained in the first and second clauses of the bill are true, but

denies that he was ever given permission by complainant, or anyone else for her, to use the road mentioned in the bill. He admits breaking the locks but denies that he did not keep the gates closed. He alleges that prior to 1928 "Rosegill" consisted of three or four thousand acres of land; that in the partition suit of *Sarah T. Nicholson, et als,* v. *Jno. T. Lomax, trustee,* instituted after the death of Ralph Wormley in the Superior Court of Chancery for Fredericksburg district, a decree was entered on the 19th day of May, 1928, appointing commissioners to partition and lay off by metes and bounds, according to value, the "Rosegill" tract of land in Middlesex county and allot the same to the parties entitled to share therein, and authorizing them to secure a surveyor, who should make a plat showing the division of the land made by them, which plat the commissioners should return to the court with their report; that upon the return of the report and plat, which were approved by the court, John T. Lomax, trustee, was ordered to make and deliver a suitable deed conveying to the parties the parts allotted them by said commissioners, which was accordingly done; that the "Rosegill" tract was divided into six parcels, designated on said plat as lots 1, 2, 3, 4, 5, 6; that complainant, Jessie K. Smith, now owns that part of "Rosegill" estate designated as lots 1 and 2 and a part of lot 3 on said plat filed with the commissioners' report; that respondent, Jas. M. Barnhardt, owns a part of lot No. 3, shown on said plat, which was conveyed to him by deed from A. L. Jones; that the deed from John T. Lomax, trustee, conveyed the said parcels of land to the respective grantees, "to hold said lands with all and singular their appurtenances to them, the said  * * *  belonging;" that in the division of "Rosegill," in 1928, the commissioners left a road through the farm from the Urbanna road by the

mill, over lots 2, 3 and 4, to connect with the main road leading from Christ Church; that said road has been in use by the owners of lots Nos. 3 and 4 from that date without interference, except on one occasion, until complainant locked the gates as above stated; that the road was plainly visible when complainant purchased the farm; that said road is absolutely necessary to respondent and the other owners of lot No. 3, and is the only convenient road over which respondent can get to Urbanna; that respondent and those under whom he claims have used said road continuously, adversely, openly and exclusively for more than twenty years prior to the purchase of "Rosegill" by complainant, with the knowledge of the owners of "Rosegill."

The prayer of the answer is that it may be treated as a cross-bill, and that complainant may be required to answer the same, but not under oath, and that the complainant be required to make proper restitution.

Many depositions were taken by the complainant and defendant to sustain their respective contentions. Besides, the complainant introduced in evidence many deeds and the defendant put in evidence the proceedings and plat in the record in the partition suit of *Sarah T. Nicholson* v. *John T. Lomax, supra.*

Nothing was said in the answer about the road in controversy being a public road. Defendant rested his case upon the contention that he had a right over the road by prescription or by appurtenance. The plaintiff averred that the defendant had no right whatever to use the mill road. Upon this issue the case was decided in the lower court.

On August 7, 1925, the court, upon consideration of the pleadings, the law and the evidence in the case, perpetuated the injunction theretofore granted herein against Jas. M. Barnhardt, and adjudged and decreed

that he was "not entitled to a right of way or easement over the lands of the plaintiff, Jessie K. Smith, either by prescription or by appurtenance to the land, and that the said J. M. Barnhardt and those claiming under him shall be forever debarred from passing over the said lands of the plaintiff known as the 'Rosegill' farm, in Middlesex county."

The defendant, Jas. M. Branhardt, took no appeal from this decree, but on August 2, 1926, presented his petition to the court asking that he be allowed to file his bill of review, and that the decree of August 7, 1925, be reviewed and set aside, for error of law apparent upon the face of the record and on the ground of after-discovered evidence.

To a decree entered on August 2, 1926, refusing the prayer of the petition, this appeal was allowed.

[1] The law is that a bill of review can be filed only upon the ground that error of law is apparent upon the face of the record, or that new evidence has been discovered since the trial.

In deciding what errors are errors of law apparent upon the face of the record, for which a bill of review will lie, the court, speaking through Judge Kelly, in *Powers* v. *Howard*, 131 Va. pages 277-8-9, 108 S. E. 687, says: "The general rules and principles by which the courts are to determine whether a bill of review will lie in a given case for errors apparent on the face of the record are well settled. The law on the subject is stated by Mr. Lile in his Equity Pleading and Practice, section 142, as follows: 'A bill of review does not lie to review or correct errors of judgment in the determination of facts. If there be error in this particular, after a final decree, it can be corrected only by an appellate court. But if error of law be apparent from an inspection of the record in the cause, and a final

decree has been entered, a proper case for a bill of review is *prima facie* presented.'

"In 2 Beach on Modern Equity Procedure, section 857, the author says: 'For the purpose of examining all errors of law, the bill, answers and other proceedings are, in this country, as much a part of the record before the court as the decree itself, for it is only by a comparison with the former that the correctness of the latter can be ascertained.'

[2] "In 1 Hogg's Equity Procedure, section 211, page 272, it is said: 'The meaning of the phrase, "error apparent upon the face of the decree," is not so restricted as the words would seem to imply. It embraces all that appears upon the face of the proceedings, including whatever was embodied in the issue. It really means error of law, disclosed by the record, as contradistinguished from a mistaken conception of fact, as shown by the evidence in the cause. To determine on bill of review whether or not error of law exists, the court will examine the original bill, the answer filed in the cause, all orders and decrees made and entered therein, the commissioner's report, so far as errors on the face thereof are concerned, and all the other proceedings, to ascertain, whether, upon the whole case, error of law has been committed.'

"While there are occasional expressions on the subject in the decisions and the text-books which might seem to suggest a more restricted rule, the propositions asserted in the last two of the above quotations are generally recognized and fully supported by authority. *Cary* v. *Macon*, 4 Call (8 Va.) 605; *Wroten* v. *Armat*, 31 Gratt. (72 Va.) 228, 260; *Rawlings* v. *Rawlings*, 75 Va. 76, 88-9; *Pracht & Co.* v. *Lange*, 81 Va. 711, 721; *Daingerfield* v. *Smith*, 83 Va. 81, 93, 1 S. E. 599; *Gills* v. *Gills*, 126 Va. 526, 543, 101 S. E. 900, 901; *Bank* v.

*Shirley,* 26 W. Va. 563; *Whiting* v. *Bank,* 13 Pet. 6, 10 L. Ed. 33, 37; *Putnam* v. *Day,* 22 Wall. 60, 22 L. Ed. 764, 765; Story's Eq. Pl. section 407."

[3] In *Rawlings* v. *Rawlings,* cited with approval in *Powers* v. *Howard, supra,* the court said: "As to errors of law, they must be such as appear on the face of the decrees, or orders, or proceedings, in the cause, arising on facts either admitted by the pleading or stated as facts in the decrees; such errors of law and such only may be corrected by bill of review.   But if the error complained of be error of judgment in the determination of facts, these can only be corrected by appeal."

[4] It is contended by James M. Barnhardt, in his petition for this appeal, that an error of law appears on the face of the record, in that the judge of the trial court held that he was not entitled to a right of way over the lands of the plaintiff, Jessie K. Smith, by appurtenance to his land, when it appears from the plat of the original "Rosegill" tract, showing its partition among the parties entitled to share therein, that the way he claims is a way appurtenant to the several lots of land into which "Rosegill" was subdivided.

The partition deed, dated November 13, 1829, from John T. Lomax, trustee, refers to each parcel of land as being lot, figure 1, 2, 3, 4, 5, or 6, "on the plat returned by the commissioners."   This deed is filed along with the answer of the defendant, but the plat is not made a part of, nor recorded along with, the deed. The plat was introduced in evidence, but the facts it tends to establish are not admitted by the pleadings, nor stated as facts in the decree.

This plat shows the division of "Rosegill" tract into six parcels and a road running from the main road, near Christ Church, on lot No. 5, across lots Nos. 4, 3 and 2 by the mill to the Rosegill road and along the Rose-

gill road to the public road to the ferry, near Urbanna. The road in question is designated on one part as "Rosegill road" and on another part as "Mill road." Each of the six parcels of land touches a public highway, except lot No. 1, and a right of way to the public road from that lot was conveyed to the owner thereof by deed from Lewis Jones to A. L. Jones, from whom Barnhardt acquired his title.

If the court erred in holding that Barnhardt was not entitled to a right of way over the land of Jessie K. Smith by appurtenance to the land, it was not an error of law apparent upon the face of the record, but was an error of judgment in the determination of the facts in the case, which cannot be taken advantage of by a bill of review.

[5] In order to entitle a litigant to a bill of review on the ground of after-discovered evidence, the evidence must be discovered after the trial and be such as could not have been discovered before, by the exercise of reasonable diligence; must be material and not merely cumulative, and such, if true, as ought on another hearing to produce a different result on the merits.

The bill of review in the instant case alleges that "prior to the hearing of the case the petitioner spent weeks in examining the old records in the clerk's office of Middlesex county, but had not found and did not know of certain other records, to-wit:

"The proceedings of the County Court of Middlesex county, which were kept, not in the clerk's office, but were piled in a disorderly mass in a room over the court house, a building separate and apart from the clerk's office. That your petitioner did not know that there were any records which were pertinent to this case, save and except those in the clerk's office. That after the entry of the decree of August 7, 1925, your peti-

tioner learned of these old records piled in this room over the court house, and that upon learning of that fact your petitioner examined the said old records and found therein the orders of the County Court of Middlesex county, certified copies of which are filed with the bill of review, which established beyond all question the fact that the road in controversy was established as a public road as early as 1707, and that efforts to change this road in 1747 and 1748 proved unavailing."

[6] Upon a petition for leave to file a bill of review, the statements contained in the bill must be taken to be true. *Connolly* v. *Connolly*, 32 Gratt. (73 Va.) 657.

The orders of the court so found and filed as exhibits with the bill of review are set forth in the following extract from the bill:

"(a) An order of the County Court of Middlesex county was entered September 3, 1863, by which Ralph Wormley, Esq., was appointed a supervisor of the road from his new quarter to the Great Church (which is now called Christ Church) and from thence to his own house.

"A certified copy of this order is herewith filed marked 'Exhibit R-2' and made a part of this bill. That Ralph Wormley's house at the time of this order was the 'Rosegill' homestead now owned by Jessie K. Smith.

"(b) An order was entered by the County Court of Middlesex in 1707, Order Book No. 4, page 112, reciting that a petition had been filed by Harry Beverley and other inhabitants of the town of Urbanna requesting that the road from Urbanna to Wormley's mill be opened by law and that the road also be cleared from the mill down the county. Commissioners were appointed to determine which was the most convenient road from Urbanna to Wormley's mill and from the mill down the county, and they were directed to report

their proceedings to the court. A certified copy of this order is herewith filed marked 'Exhibit R-3' and made part of this bill.

"Wormley's mill is the mill on the 'Rosegill' farm by which the road now running through the property passes.

"(c) An order was entered by the court June 2, 1707, Order Book No. 4, page 114, which recites that the viewers appointed to report which was the most convenient road from Urbanna to Wormley's mill and down the county had reported as follows:

" 'In obedience to this order we, the subscribers, did meet to find which is the most convenient road to Esq. Wormley's mill, and we find that from Urbanna across the creek to the Shallop landing and through the old field the usual way to the mill, and from the mill by the Hog House Quarter along the road to the Great Church, and so along the main road down the county.'

"The court being divided in their opinion the petition and report was continued for a fuller court. A certified copy of this order is herewith filed, marked 'Exhibit R-4.'

"The present road leading from Urbanna through the field is and always has been the usual way to the mill. As the road now runs it corresponds with the road described in this order. The Hog House Quarter is a part of the property owned by your petitioner and the 'Great Church' referred to in this order is at present called Chrish Church.

"(d) On June 7, 1707, an order was entered by the court, Order Book No. 4, page 122, approving the report of the viewers and directing that the said road be laid out according to the report of the said Hopkins and Goar, the viewers.

"A certified copy of which order is herewith filed marked 'Exhibit R-5' and made a part of this bill.

"(e) It appears from Order Book No. 4, page 124, that an appeal was asked for by Wormley and the matter was deferred until a later court. A certified copy of which is herewith filed marked 'Exhibit R-6,' and made a part of this bill.

"(f) By an order entered 1707, Order Book No. 4, page 154, the supervisor was ordered to clear and open the road in pursuance with the report of the viewers. Wormley asked for an appeal from this order and the matter was continued. A certified copy of this order is herewith filed, marked 'Exhibit R-7.'

"(g) On February 6, 1708, Order Book No. 4, page 158, an order was entered denying the appeal, which had been prayed for from the order opening the road from Urbanna by the mill down the county, confirming the action of the court in opening the road and directing that the order of July 7, 1707, be put in execution. A certified copy of which order is herewith filed marked 'Exhibit R-8,' and made a part of this petition.

"(h) On October 4, 1708, an order was entered, Order Book No. 4, page 202, directing Francis Smith, supervisor of middle precinct, to lay open the road from Urbanna by the mill and Great Church, from which order Ralph Wormley moved for an appeal to the next General Court, but the court decided that he was not entitled to an appeal. A certified copy of which order is herewith filed marked 'Exhibit R-9.'

"(i) Thirty-nine years later other orders were entered by the Middlesex County Court, which recognized the existence of more than one public road from Urbanna to Christ Church. An order entered August 4, 1747, Order Book 1743-1757, page 129, appoints viewers to view the roads leading from the Mother Church of

Christ Church parish to Urbanna creek, and report to the next court as to which of them they should think the most near and convenient way. A copy of this order is herewith filed marked 'Exhibit R-10.'

"(j) At the September term, 1747, Order Book, page 135, there is an order reciting that the viewers had reported concerning the roads from the Mother Church of Christ Church parish to Urbanna creek, and the matter was continued until the next term of the court.

"At the October term, 1747, Order Book, page 135, action on the viewers' report is again continued.

"At the November term, 1747, Order Book, page 145, the matter was again continued. A certified copy of each of these three orders is herewith filed marked 'Exhibit R-11,' and made a part of this bill.

"(k) At the January term, 1748, Order Book, page 146, the court considered the report of the viewers concerning the roads leading from the Mother Church of Christ Church parish to Urbanna creek, and entered an order that the public road do remain as it is and that the motion for altering same be dismissed.

"The foregoing orders clearly show that the road leading from Urbanna creek by the mill and Hog House Quarter to Christ Church was laid out and established as a public road in 1707, and further show that efforts to change the location of the road forty years later were unavailing. The road as described in these orders is identical with the road as shown on the plat referred to in the partition deed and filed in the partition suit in which the 'Rosegill' tract was divided, and is identical with the road that had been used through the 'Rosegill' farm up until the institution of this suit. And your petitioner respectfully submits that this road is the same as the road mentioned in this suit over which your petitioner has been passing across

the 'Rosegill' property, and that it is a public road and that he has a right to pass over it."

[7] "A highway once legally established cannot lose its character, if the public only object, except by its extinguishment or vacation, in due course of law.   *   *   *   And it is true that this right ceases only by force of law." 1 Elliott on Roads and Streets (4th ed.), section 49.

[8] The newly discovered evidence is not cumulative since there was no evidence in the case that the road had been legally established as a public road.  It could not have been discovered before the entry of the final decree, for the reason that petitioner did not know until after that date that the old records were stored in a building outside of the clerk's office and separate and apart therefrom.  The evidence is material, since, if the road is a public highway, petitioner has an absolute right to pass over it.  If, as seems certain, the road in controversy is the same road referred to in court orders which are filed as exhibits with the bill of review, the after-discovered evidence will probably produce a different result on another hearing.

[9] It appears from the bill of review that the judge of the trial court, in delivering his opinion at the time of the entry of the decree of August 7, 1925, stated that he "did not consider the plat filed in the partition suit by which the Rosegill tract was partitioned, and which plat is referred to in the deed from John Taylor Lomax, trustee, to the heirs at law of William Wormley, dated November 13, 1829, for the reason that the statute law then in effect had not been complied with;" referring to Code 1819, chapter 99, section 14, which reads as follows:

"Hereafter, every partition of any tract of land or lot, and every assignment of dower in any tract of

land or lot, made under any order or decree of any court, and every judgment or decree, by which the title to any tract of land or lot shall be recovered, shall be duly recorded in the court of the county or corporation in which such tract or lot, or part thereof, shall lie, and until so recorded such partition or assignment, judgment or decree, shall not be received in evidence in support of any right claimed by virtue thereof."

In this the court erred. The order of the Middlesex court directing that the partition deed be recorded and the recordation of the deed, since the partition was made by deed, which conveys the several parcels of land by metes and bounds, was a sufficient compliance with that statute.

The court should have allowed the bill of review to be filed, on the ground of after-discovered evidence.

The decree will be reversed and the case remanded with instructions to the trial court to permit the bill of review to be filed.

*Reversed and remanded.*